Stuart M. Richter (CA 126231)
stuart.richter@katten.com
Andrew J. Demko (CA 247320)
andrew.demko@katten.com
Camille A. Cameron (CA 307859)
camille.cameron@katten.com
Ashley T. Brines (CA 322988)
ashley.brines@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: 310.788.4400
Facsimile:  310.788.4471

Attorneys for Defendant
American Airlines Federal Credit Union

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA VARGA, individually, and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>AMERICAN AIRLINES FEDERAL CREDIT UNION, and DOES 1-100,<br><br>                    Defendants. | Case No.     2:20-cv-04380-DSF-KS<br><br>**DEFENDANT AMERICAN AIRLINES FEDERAL CREDIT UNION'S MOTION TO DISMISS PLAINTIFF SYLVIA VARGA'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br><u>Hearing</u><br>Date:      November 9, 2020<br>Time:      1:30 p.m.<br>Place:     Courtroom 7D<br><br>**Hon. Dale S. Fischer** |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 9, 2020 at 1:30 p.m. or as soon thereafter as this matter may be heard, before the Honorable Dale S. Fischer in Courtroom 7D of the United States District Court, Central District of California, located at the First Street Courthouse, 350 West 1st Street, Los Angeles, CA 90012, defendant American Airlines Federal Credit Union ("American Airlines FCU") will and hereby does move pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the First Amended Complaint ("FAC") and each claim asserted therein by plaintiff Sylvia Varga ("Plaintiff").

American Airlines FCU brings this motion on the grounds that Plaintiff's claims fail as a matter of law because (1) the parties' contract allows American Airlines FCU to charge fees in the exact way challenged by Plaintiff; (2) Plaintiff's breach of the implied covenant claim is duplicative of her flawed breach of contract claim; (3) Plaintiff's California Unfair Competition Law ("UCL") claim is duplicative of her flawed breach of contract claim and American Airlines FCU did not engage in any unfair or unlawful acts or practices; and (4) Plaintiff's claim for money had and received rises and falls with her other claims.

1    This motion is based on this notice, the accompanying memorandum of

2    points and authorities, the Declaration of Mariela Gonzalez, the Declaration of

3    Camille A. Cameron, the pleadings and papers on file in this action, such other and

4    further matters of which this Court may or must take judicial notice, and such

5    arguments as may be considered by the Court at the hearing on this matter. This

6    motion is made following the conference of counsel pursuant to Local Rule 7-3,

7    which took place on August 31, 2020 by telephone.

8

9                                    Respectfully submitted,

10   Dated:  September 8, 2020        **KATTEN MUCHIN ROSENMAN LLP**

11

12                                   By: _____/s/Stuart M. Richter_____

13
                                     Attorneys for Defendant
14                                   American Airlines Federal Credit Union

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................1

II.   ALLEGATIONS AND JUDICIALLY NOTICEABLE FACTS .............2

    A.    Alleged Breach No. 1: "APPSN" Overdraft Fees .........................3

        1.    APPSN Transactions ............................................3

        2.    The Parties' Agreement Regarding APPSN
            Transactions ........................................................5

    B.    Alleged Breach No. 2: "Retry" Fees .............................................7

        1.    So-Called Retry Fees ............................................7

        2.    Plaintiff's Allegations .........................................8

        3.    The Parties' Contract ...........................................8

III.  LEGAL STANDARD ...............................................................9

IV.   ARGUMENT .........................................................................10

    A.    Plaintiff's Case Is Preempted To The Extent She Challenges
        American Airlines FCU's Disclosures .......................................10

    B.    Plaintiff's Breach of Contract Claim Fails as a Matter of
        Law .......................................................................................10

        1.    American Airlines FCU did not breach the parties'
            contract by assessing overdraft fees on so-called
            "APPSN" transactions. ......................................11

        2.    American Airlines FCU did not breach the parties'
            contract by assessing so-called "retry" fees. ..................16

    C.    Plaintiff's UCL Claim Fails as a Matter of Law ..........................19

        1.    Plaintiff's UCL claim is preempted by federal law. ...........19

        2.    The alleged practices are not unfair. ...........................19

3.     Plaintiff has not pleaded any violation of another law for an "unlawful" UCL claim. ............................................20

4.     Plaintiff's UCL claim is derivative of her flawed contract claims. ...............................................................21

5.     Plaintiff's claim is deficient for lack of UCL standing. .......21

6.     Plaintiff failed to allege she is entitled to equitable remedies under the UCL. ..................................................22

D.    Plaintiff's Remaining Claims Also Fail ........................................22

V.   CONCLUSION ..................................................................................24

1

2

## <u>**TABLE OF AUTHORITIES**</u>

3

**Page(s)**

4

**Cases**

5

6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................9, 10, 13

7

8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................9, 10

9

10

*Berryman v. Merit Prop. Mgmt., Inc.*,
   152 Cal. App. 4th 1544 (2007) ...........................................................................23

11

*Block v. eBay, Inc.*,
   747 F.3d 1135 (9th Cir. 2014) ............................................................................22

12

13

*Bomanite Corp. v. Cathay Pigments (USA), Inc.*,
   No. 04-5333, 2005 WL 1661899 (E.D. Cal. July 14, 2005) ..............................11

14

15

*Boone v. MB Fin. Bank, N.A.*,
   375 F. Supp. 3d 987 (N.D. Ill. 2019)..............................................................14, 20

16

17

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
   2 Cal. 4th 342 (1992) ..........................................................................................23

18

19

*Carstens Chevrolet, Inc. v. Gen. Motors, LLC*,
   No. 16-02618, 2017 WL 2654903 (E.D. Cal. June 20, 2017) ....................10, 23

20

21

*Chambers v. NASA Fed. Credit Union*,
   222 F. Supp. 3d 1 (D.D.C. 2016) .......................................................................12

22

23

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   68 Cal. App. 4th 445 (1998).................................................................................12

24

*Davis v. HSBC Bank Nev., N.A.*,
   691 F.3d 1152 (9th Cir. 2012)...............................................................3, 19, 20

25

26

*Dawkins v. Chase Bank, N.A.*,
   No. 13-1308, 2013 WL 4494527 (N.D. Tex. Aug. 22, 2013)............................23

27

28

*Domann v. Summit Credit Union*,
   No. 18-167, 2018 WL 4374076 (W.D. Wis. Sept. 13, 2018) ............................12

iii

*Elvin v. Am. Home Mortg. Inv. Trust 2005-2,*
  No. 08-1179, 2009 WL 839930 (E.D. Cal. Mar. 30, 2009) ............................... 10

*Gutierrez v. Wells Fargo Bank, NA,*
  704 F.3d 712 (9th Cir. 2012) ........................................................................... 19

*Hale v. Sharp Healthcare,*
  183 Cal. App. 4th 1373 (2010) ....................................................................... 23

*Hall v. Time, Inc.,*
  158 Cal. App. 4th 847 (2008) ......................................................................... 22

*Hall v. W. Ref. Retail, LLC,*
  No. 19-855, 2020 WL 3891453 (C.D. Cal. Apr. 24, 2020) ............................ 21

*Hux v. S. Methodist Univ.,*
  819 F.3d 776 (5th Cir. 2016) .......................................................................... 23

*Johnson v. Select Portfolio Servicing, Inc.,*
  No. 15-9231, 2016 WL 837895 (C.D. Cal. Mar. 3, 2016) ............................... 19

*Klaehn v. Cali Bamboo, LLC,*
  No. 19-1498, 2020 WL 3971518 (S.D. Cal. July 13, 2020) ............................ 22

*Lambert v. Navy Fed. Credit Union,*
  No. 19-103, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019),
  appeal docketed, 19-1993 (4th Cir. 2019) ............................................... 10, 17

*Lloyd v. Navy Fed. Credit Union,*
  No. 17-1280, 2018 WL 1757609 (S.D. Cal. Apr. 12, 2018) ............................ 15

*Lossia v. Flagstar Bancorp, Inc.,*
  895 F.3d 423 (6th Cir. 2018) ............................................................................. 8

*Lussoro v. Ocean Fin. Fed. Credit Union,*
  No. 18-7400, 2020 WL 1941236 (E.D.N.Y. 2020) .......................................... 15

*Page v. Alliant Credit Union,*
  No. 19-5965, 2020 WL 5076690 (N.D. Ill. Aug. 26, 2020) ............................ 17

*Pasadena Live, LLC v. City of Pasadena,*
  114 Cal. App. 4th 1089 (2004) ....................................................................... 23

*Ramirez v. Baxter Credit Union,*
  No. 16-03765, 2017 WL 1064991 (N.D. Cal. Mar. 21, 2017) .......................... 12

iv

*Roberts v. Capital One, N.A.*,
719 F. App'x 33 (2d Cir. 2017) ......................................................................... 15

*Smith v. Bank of Hawaii*,
No. 16-513, 2017 WL 3597522 (D. Haw. Apr. 13, 2017) ................................. 12

*Sonner v. Premier Nutrition Corp.*,
No. 18-15890, 2020 WL 4882896 (9th Cir. June 17, 2020) ............................. 22

*Stanford Hosp. & Clinics v. Humana, Inc.*,
No. 13-04924, 2015 WL 5590793 (N.D. Cal. Sept. 23, 2015) ................... 10, 11

*Velasquez v. Chase Home Fin., LLC*,
No. 12-0433, 2012 WL 1378492 (E.D. Cal. Apr. 19, 2012),
*aff'd* 588 F. App'x 676 (9th Cir. 2014) .......................................................... 21

*Villareal v. Chamberlain Coll. of Nursing & Health Scis., Inc.*,
No. 19-300, 2019 WL 4736488 (S.D. Tex. Sept. 27, 2019) ............................. 23

*Walker v. Countrywide Home Loans, Inc.*,
98 Cal. App. 4th 1158 (2002) .......................................................................... 19

*Whittington v. Mobiloil Fed. Credit Union*,
No. 16-482, 2018 WL 6582824 (E.D. Tex. Oct. 26, 2018), aff'd
2019 WL 5198474 (5th Cir. Oct. 15, 2019) ..................................................... 15

**Statutes**

Cal. Bus. & Prof. Code § 17204 .............................................................................. 21

Cal. Code Civ. Proc. § 1858 .................................................................................... 12

California's Unfair Competition Law ..................................... 2, 3, 19, 20, 21, 22, 23

**Rules**

Rule 12(b)(6) ............................................................................................................ 9

**Regulations**

12 C.F.R. Section 1005.17(d)(1) ............................................................................. 20

**Other Authorities**

ACH Operations Bulletin #1-2014: Questionable ACH Debit
    Origination: Roles and Responsibilities of ODFIs and RDFIs
    (Sept. 30, 2014), *available at*  https://www.nacha.org/news/ach-
    operations-bulletin-1-2014-questionable-ach-debit-origination-
    roles-andresponsibilities ........................................................................... 9

Federal Reserve Banks Operating Circular No. 3: Collection of Cash
    Items and Returned Checks § 3.1(a), *available at*
    https://www.frbservices.org/assets/resources/rules-
    regulations/010119-operating-circular-3.pdf ...................................... 8

NACHA Rule § 2.12.4.1 ......................................................................... 8, 9

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

In this putative class action, plaintiff Sylvia Varga alleges defendant American Airlines FCU breached its own Account Agreement by assessing two types of overdraft fees: (1) fees for debit-card transactions that were authorized with a sufficient available balance but later settled or posted to the account with an insufficient one—so-called "Authorize Positive, Purportedly Settle Negative" or "APPSN" transactions; and (2) fees for ACH payments where a third-party merchant created a second or third transaction to be paid when its first attempt was returned for insufficient funds—so-called "Retry" fees. Plaintiff does not challenge American Airlines FCU's right to assess overdraft fees generally or that the fees at issue should have been disclosed more accurately in American Airlines FCU's contract because those types of claims are preempted by federal law. Rather, Plaintiff claims American Airlines FCU's Account Agreement *prohibits* it from assessing those two types of fees. All of Plaintiff's claims should be dismissed because the Account Agreement does not prohibit American Airlines FCU from assessing these or any other overdraft fees. To the contrary, each of the fees Plaintiff complains about is clearly and unambiguously provided for under the terms of the Account Agreement, fee schedule, and other American Airlines FCU contract documents.

*The APPSN Fees.*  According to Plaintiff, American Airlines FCU must assess overdraft fees for debit-card transactions based on her available balance at the time a transaction is authorized (*i.e.*, when she gives her debit card to a merchant), not when the merchant presents the transaction later to American Airlines FCU and money is actually paid from her account. The Account Agreement, however, clearly states that an overdraft fee will be assessed for debit cards (and all other types of payments) if there are insufficient available funds at the time a transaction is paid or posted to Plaintiff's account. Contrary to Plaintiff's

Katten
Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

allegations, the Account Agreement painstakingly details every aspect of a debit-card transaction, how it affects a member's balance, and how it can result in a fee even if there is enough available balance when a member initially swipes his or her card.

*The Retry Fees.* Plaintiff's "Retry" claim fails for the same reason: the Account Agreement permits American Airlines FCU to assess a fee on a merchant's second or third attempt to collect on a payment when a member's account lacks sufficient available funds. Nothing in the agreement prohibits American Airlines FCU from charging a non-sufficient funds ("NSF") or overdraft fee on an insufficient funds transaction simply because a fee was assessed on a previous payment attempt that was rejected.

Plaintiff's remaining claims should also be dismissed. The breach of the implied covenant claim fails because it is duplicative of her breach of contract claim. Likewise, Plaintiff's claims for violation of California's UCL and Money Had and Received fail because the underlying contract claims are not viable. Further, the alleged practices are not unlawful, unfair, or fraudulent.

This dispute is ripe for resolution at the pleading stage. Plaintiff's claims are based on her idiosyncratic and unreasonable interpretation of the parties' contract. Whether the contract language can be reasonably interpreted to mean what Plaintiff claims is a pure question of law for the Court. Because the plain terms of the Account Agreement contradict Plaintiff's interpretation, and, in fact, expressly authorize American Airlines FCU to assess the fees in question, this motion should be granted without leave to amend.

## II.    ALLEGATIONS AND JUDICIALLY NOTICEABLE FACTS

American Airlines FCU is a federally-chartered credit union headquartered in Fort Worth, Texas. First. Am. Compl. ("FAC") ¶ 5. "Credit unions are nonprofit cooperatives, owned by their members and democratically controlled, that may only lend and pay dividends to their members and, as such, are disinclined by their

Katten
GattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

nature and structure to engage in the kinds of practices regarded as predatory or abusive." *NCUA Opinion Letter 04-0147*, at 3 (Feb. 10, 2004), *available at* https://www.ncua.gov/files/legal-opinions/OL2004-0147.pdf.

Like nearly all financial institutions, American Airlines FCU offers overdraft privilege plans for its members' accounts. Declaration of Mariela Gonzalez ("Gonzalez Decl.") ¶ 5, Ex. B (Account Agreement) at 14-15.[1] If there are insufficient available funds to pay an ACH transaction and it is rejected, then American Airlines FCU may charge a returned item or NSF fee. *Id.* at 14. If American Airlines FCU elects to pay the overdraft transaction, then it will assess a paid item or overdraft fee. *Id.* American Airlines FCU's overdraft privilege plans are described in the Account Agreement, which Plaintiff agreed to when she opened and used her account. FAC ¶¶ 4, 71, 118; Account Agreement at 3-4.

Plaintiff asserts four causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) money had and received; and (4) violations of California's UCL. As explained next, these claims are premised on two purported breaches of American Airlines FCU's Account Agreement and related contract documents.

## A.   Alleged Breach No. 1: "APPSN" Overdraft Fees

1.   **APPSN Transactions.** To understand this theory, a brief description of debit-card transactions may be helpful. There are two types of debit-card payments: PIN or personal identification number transactions, which are not at issue in this case, and signature transactions. A signature debit-card transaction occurs when a merchant processes a debit card purchase like a credit card purchase, typically through credit card networks. *See* FAC ¶

---

[1]   The Court may consider Plaintiff's account documents because they are incorporated by reference in the FAC. *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012); *Alsup v. U.S. Bancorp.*, No. 14-01515, 2015 WL 224748, at *8-9 (E.D. Cal. Jan. 15, 2015). Plaintiff also alleges that she attached the account documents as exhibits to the FAC, *see* FAC ¶¶ 32, 36, 37, but neglected to do so.

MEMORANDUM OF POINTS AND AUTHORITIES

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

27; Account Agreement at 44. For these transactions, a merchant requests authorization from American Airlines FCU for a specified amount when the card is physically or virtually swiped at a card reader. FAC ¶ 27; Account Agreement at 16, 56-57. If American Airlines FCU authorizes the transaction, then it is obligated to pay it so American Airlines FCU will reduce the member's available balance in the amount requested by the merchant, which is not always the same amount the merchant eventually submits for payment.[2] FAC ¶¶ 28 & 30; Account Agreement at 16, 56-57. This is like using a check and giving it to the merchant; it is a promise to pay. When the merchant presents the transaction for payment (like cashing the check)—sometimes days after the authorization—funds are then debited from the account and paid to the merchant.  FAC ¶ 29; Account Agreement at 16-17, 56-57.

APPSN transactions occur as the result of intervening payments that deplete the member's available balance prior to a signature debit-card transaction being presented to American Airlines FCU for payment. *See* FAC ¶ 23 ("APPSN transactions only exist because intervening checking account transactions supposedly reduce an account balance."). This is essentially the same result as if the member checked her balance, wrote a check, and spent money between when she wrote the check and when it was cashed.

The thrust of Plaintiff's APPSN theory is that overdraft fees for debit-card "swipe" transactions, unlike all other types of payment transactions, must be assessed based on a member's available balance at the time the transaction is authorized, not when the merchant presents it for payment and the money actually leaves the account. *Id.* ¶¶ 15-17, 30. Because there was supposedly enough available balance at the time her transaction was authorized, Plaintiff claims there was enough money in her account and there cannot be a fee, regardless of how

---

[2]     For example, a restaurant may seek authorization for the amount of the bill, but will later seek payment for the bill plus a tip.

Katten

Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

much she spent before the debit-card payment was paid by American Airlines FCU. Advancing this theory, Plaintiff complains that American Airlines FCU assessed overdraft fees for transactions in July 2019 and August 2019 when her account was purportedly "positive" at the time of authorization. *Id.* ¶ 60.

### 2.    The Parties' Agreement Regarding APPSN Transactions.

American Airlines FCU's Account Agreement provides the credit union may assess a fee if a member overdraws her account:

> We assess a fee for each item that we either pay, which results in an overdraft, or do not pay, which would have resulted in an overdraft had we paid it.

Account Agreement at 14. It also lays out *when* this fee determination is made:

> You agree to maintain available funds in your Accounts at all times sufficient to *pay* any withdrawal order (whether oral, written, or otherwise) or *item presented for payment* against the applicable Account. 'Overdrawing' your Account means that there are not sufficient available funds in your Account to *pay* for a transaction, but we pay the transaction anyway. . . . If we do *pay* an order or an item, the amount of which exceeds the available balance in the Account upon which it is drawn, or if any item deposited to your Account is subsequently returned and charged back to your Account creating an overdraft, you agree to pay us immediately the amount by which that Account is overdrawn including any fees which we might assess.

*Id.* (emphases added); *see also id.* ("We may *pay* all, some, or none of your overdrafts, without notice to you.") (emphasis added). Thus, an overdraft is only "created" when a transaction is paid.

In addition, the Account Agreement describes how signature debit-card transactions work. It explains how an authorization of a debit-card payment affects the member's available balance. *Id.* at 16, 56-57. The Account Agreement details that third-party merchants set the amount of the authorization,[3] which may be more than the actual purchase amount:

> When you use your Debit Card at certain merchants such as self-service gas stations, restaurants, hotels, airlines, and rental car companies, *the merchant may request a preauthorization hold* to cover the final transaction amount. When we preauthorize the

---

[3]    American Airlines FCU refers to the authorization amount as a "preauthorization hold." Account Agreement at 56.

Katten

Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

transaction, we commit to make the requested funds available when the transaction finally posts and as such, we generally place a temporary hold against some or all of the funds in the Account linked to your debit card, *based on the amount of the preauthorization request from the merchant*.

…

The preauthorization hold *may be in an amount greater than or less than the actual purchase amount* and may be placed on your Account for up to three (3) business days. *The preauthorization hold may differ from the transaction amount because the actual transaction amount is not yet known to the merchant at the time the authorization request is submitted after your Debit card is swiped* (such as a gas station purchase). This can happen at a restaurant or a gas station, where your Debit card is swiped before your actual transaction amount is known, because you may choose to add a tip to a restaurant transaction or because the amount of gas you pump is unknown when your card is swiped. In some cases, we may not receive an authorization request from the merchant, and there will be no authorization hold reflected in your available balance. *We cannot control how much a merchant asks us to authorize, or when a merchant submits a transaction for payment.*

*Id.* at 56-57 (emphases added); *see also id.* at 16 ("If you were to use your Debit card at a restaurant to buy lunch for $20, then that merchant could ask us to pre-authorize the payment in that amount (or even a different amount). . . . When the restaurant submits its bill for payment (which could be a few days later and for a different amount than the amount of the authorization hold), we will post the transaction to your Account . . .").

Cognizant that there is a difference between, and that there may be a delay between, preauthorization and payment for certain debit-card transactions, American Airlines FCU explains this to its members:

[T]he amount of the preauthorization hold will be subtracted from your available balance as authorization requests are received by us throughout each day. *Until the transaction finally settles or we otherwise remove the hold* (for example, we may remove the hold because it exceeds the time permitted, as discussed below, or we determine that it is unlikely to be processed), the funds subject to the hold may not be available to you for other purposes. *At some point after you sign for the transaction, it is processed by the merchant and submitted to us for payment.* This can happen hours or sometimes days after you signed for it, depending on the merchant and its processing company. These payment requests are received in real time throughout the day and are posted to your Account as they are received.

*Id.* at 56-57 (emphases added); *see also id.* at 16 ("The available balance takes into

account factors such as holds placed on deposits and pending transactions (such as pending Debit card purchases) that the Credit Union has authorized but that have not yet posted to your Account."); *id.* at 13 ("Credits and debits are not posted to your Account in the order in which they occur or we receive them. Sometimes, they are not posted to your Account on the same day that they occur. For example, when you write a check or use your Debit card to make a purchase, the merchant or the person or business from whom you made the purchase may not present the check or debit charge to us for payment until several days later").

The Account Agreement also provides a detailed example of how temporary holds from debit-card purchases work:

> Assume your . . . available balance [is] $50, and you use your Debit card at a restaurant for $20. If the restaurant requests preauthorization in the amount of $20, an authorization hold is placed on $20 in your Account, so your available balance is only $30. . . . Before the restaurant charge is sent to us for payment, a check that you wrote for $40 clears. Because your available balance is only $30 (due to the authorization hold of $20), your Account will be overdrawn by $10, even though your actual balance is $50. In this case, we may pay the $40 check, but you will be charged a Paid Non-Sufficient Funds Fee of $25. That fee will be deducted from your Account, further increasing the overdrawn amount.

*Id.* at 16-17. Finally, American Airlines FCU warns its members:

> YOU ACKNOWLEDGE THAT YOU MAY STILL OVERDRAW YOUR ACCOUNT EVEN THOUGH THE AVAILABLE BALANCE APPEARS TO SHOW THERE ARE SUFFICIENT FUNDS TO COVER A TRANSACTION THAT YOU WANT TO MAKE. This is because your available balance may not reflect all your outstanding checks, automatic bill payments that you have authorized, or other outstanding transactions that have not yet been paid from your Account. In the example above, the outstanding check will not be reflected in your available balance until it is presented to us and paid from your Account.
>
> In addition, your available balance may not reflect all of your Debit card transactions. . . .

*Id.* at 17.

### B.  Alleged Breach No. 2: "Retry" Fees

**1.  So-Called Retry Fees.**  A so-called "retry" fee is assessed when a member gives his or her checking account number to a third party to

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

7

make payments. The third party will then initiate an ACH transaction in an attempt to get paid. *See Lossia v. Flagstar Bancorp, Inc*., 895 F.3d 423, 426-27 (6th Cir. 2018) (explaining how ACH transactions work). If the attempt is rejected, then the third party may re-submit an ACH by creating a new transaction up to two more times. *See* Declaration of Camille A. Cameron ("Cameron Decl.") ¶ 2, Ex. E (National Automated Clearing House Association (NACHA) Rule § 2.12.4.1); Federal Reserve Banks Operating Circular No. 3: Collection of Cash Items and Returned Checks § 3.1(a), *available at* https://www.frbservices.org/assets/resources/rules-regulations/010119-operating-circular-3.pdf (stating a bounced check may be submitted a second time).

      **2.**     **Plaintiff's Allegations.**   Plaintiff claims that even though a transaction is rejected and a third party elects to get paid again, it is still the same "item." She alleges American Airlines FCU breached the parties' contract by "imposing more than one NSF fee, or an NSF fee followed by [*sic*] overdraft fee, on the same electronic item." FAC ¶ 3 (emphasis omitted). Specifically, Plaintiff alleges that on September 5, 2019, American Airlines FCU rejected a $5.55 transfer to PayPal via an ACH transaction due to insufficient funds and charged her an NSF fee. *Id.* ¶¶ 65-66. Plaintiff then alleges that on September 11, 2019 she was charged another NSF fee when PayPal sought payment a second time against insufficient funds. *Id.* ¶ 57. Plaintiff claims the second NSF fee was improper because she concludes it was allegedly linked to a "single transaction," and concludes without any support, that it was "capable at most of receiving a single NSF Fee (if AAFCU returned it) or OD Fee (if AAFCU paid it)[,]" even though she had an insufficient account balance when PayPal sought payment the second time.

      **3.**     **The Parties' Contract.**   The Account Agreement states American Airlines FCU will "assess a fee for *each* item that we either pay,

**Katten**
Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

which results in an overdraft, or do not pay, which would have resulted in an overdraft had we paid it." Account Agreement at 14 (emphasis added). American Airlines FCU's Fee Schedule provides, in relevant part, that there is an "Unpaid Non-Sufficient Funds (NSF)" fee of "$25 *Each*" for "NSF & Uncollected Funds on checks, ACH or other electronic transactions." Gonzalez Decl. ¶ 6, Ex. C (Fee Schedule) at 1 (emphasis added).

The NSF fees charged to Plaintiff are also governed by the NACHA Rules incorporated into the Account Agreement. Account Agreement at 21. As is relevant here, the NACHA Rules state that a merchant "may Reinitiate an Entry" that "was returned for insufficient or uncollected funds." NACHA Rule § 2.12.4.1(a).[4] The resubmitted charge is a new transaction with a unique identifying transaction code.  ACH Operations Bulletin #1-2014: Questionable ACH Debit Origination: Roles and Responsibilities of ODFIs and RDFIs (Sept. 30, 2014) (citing NACHA Rules, Subsection 2.12.4), *available at* https://www.nacha.org/news/ach-operations-bulletin-1-2014-questionable-ach-debit-origination-roles-andresponsibilities. Contrary to Plaintiff's allegations that American Airlines FCU resubmitted the payment requests, it is up to the merchant to decide whether and when a returned item will be resubmitted for payment. *See* NACHA Rule § 2.12.4.1.

## III.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual content must allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere

---

[4]     In addition to being incorporated by reference into the contract, the Court may take judicial notice of the relevant NACHA Rules because they are publicly available in print and on the internet, and the content of the Rules is not reasonably subject to dispute. *See* Request for Judicial Notice at 2-3.

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

"'labels and conclusions'" or "'naked assertions' devoid of 'further factual enhancement'" do not suffice. *Id*. (quoting *Twombly*, 550 U.S. at 555, 557) (internal brackets omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

## IV.   ARGUMENT

### A.   Plaintiff's Case Is Preempted To The Extent She Challenges American Airlines FCU's Disclosures

Plaintiff's FAC is replete with allegations attacking the fairness of overdraft fees and examples of how American Airlines FCU's contract language supposedly could have been more clear. To the extent she bases any of her claims on these allegations, they are preempted. *Lambert v. Navy Fed. Credit Union*, No. 19-103, 2019 WL 3843064, at *2-3 (E.D. Va. Aug. 14, 2019), *appeal docketed*, 19-1993 (4th Cir. 2019) ("it is well established that state law claims regarding a federal credit union's failure to disclose certain fee practices or any perceived unfairness in the fee practices themselves are preempted") (citations omitted).

### B.   Plaintiff's Breach of Contract Claim Fails as a Matter of Law

To state a claim for breach of contract, Plaintiff must allege (among other things) that American Airlines FCU owed her a contractual obligation and breached it. *See Carstens Chevrolet, Inc. v. Gen. Motors, LLC*, 16-02618, 2017 WL 2654903, at *5 (E.D. Cal. June 20, 2017).

Where a contract is unambiguous, "[c]ontract interpretation is a question of law for the court to decide." *Stanford Hosp. & Clinics v. Humana, Inc.*, No. 13-04924, 2015 WL 5590793, at *4 (N.D. Cal. Sept. 23, 2015). "Language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." *Elvin v. Am. Home Mortg. Inv. Trust 2005-2*, No. 08-1179, 2009 WL

**Katten**
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

10

839930, at \*15 (E.D. Cal. Mar. 30, 2009). "A contract provision is ambiguous when it is capable of two or more constructions both of which are reasonable." *Id.* However, the court "will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." *Id.* If the language is unambiguous, the court gives effect to its plain meaning. *Stanford Hosp.*, 2015 WL 5590793 at \*4.[5]

### 1. American Airlines FCU did not breach the parties' contract by assessing overdraft fees on so-called "APPSN" transactions.

Plaintiff has not alleged (and cannot allege) a claim for breach of contract based on the assessment of overdraft fees on APPSN transactions. A contract's words "must be given their plain and ordinary meaning." *Bomanite Corp. v. Cathay Pigments (USA), Inc.*, No. 04-5333, 2005 WL 1661899, at \*7 (E.D. Cal. July 14, 2005). The ordinary meaning of the Account Agreement is clear that an overdraft fee is triggered when a transaction is *presented* against an insufficient available balance and *paid* as an overdraft, not when it is authorized, as Plaintiff contends:

> You agree to maintain available funds in your Accounts at all times sufficient to *pay* any withdrawal order . . . or item *presented for payment* against the applicable Account. *'Overdrawing'* your Account means that there *are not sufficient available funds in your Account to pay for a transaction*, but we *pay* the transaction anyway. . . . If we do *pay* an order or an item, the amount of which exceeds the available balance in the Account upon which it is drawn, or if any item deposited to your Account is subsequently returned and charged back to your Account creating an overdraft, you agree to pay us immediately the amount by which that Account is overdrawn including any fees which we might assess.

Account Agreement at 14 (emphases added); *see also id.* ("We assess a fee for each item that we [] *pay*, which *results in an overdraft* . . .") (emphases added); *id.* at 13 ("On any given business day, if we receive more than one *item for payment*

---

[5]    Because the Account Agreement contains a Texas choice-of-law provision, Account Agreement at 36, Texas law presumably applies to Plaintiff's claims. For the purposes of this motion, however, we cite both Texas and California cases where the law of the two jurisdictions is not substantively different.

11

Katten

Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

and if we determine there are sufficient funds to *pay* one or more but not all of the items, then the number of *items paid* and the overdraft and returned item fees assessed could be affected by the order that we choose to *post* those items.") (emphases added). Further, the opt-in form, which is one of the "account documents" (*see, e.g.*, FAC ¶¶ 16, 118) relating to overdrafts, states: "*An overdraft occurs when you do not have enough money available in your checking account to cover a transaction, but we pay it anyway.*" Gonzalez Decl. ¶ 7, Ex. D (Opt-In Form) at 1 (emphases added).[6]

From this language, it is clear that American Airlines FCU determines whether to assess an overdraft fee at the time any type of transaction, including a debit-card transaction, is actually paid. Nothing in the Agreement indicates that overdraft fees for debit-card signature transactions are subject to any different or special rule. Specifically, nothing in the Agreement provides, as Plaintiff advocates, that overdraft fees are assessed at the time a debit purchase is authorized. Indeed, if the Agreement were interpreted in the manner Plaintiff suggests, the phrases "presented for payment" and "pay" would be rendered meaningless, which is inconsistent with black letter contract law. *See City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 473 (1998) ("Courts must interpret contractual language in a manner which gives force and effect to every provision, and not in a way that renders some clauses nugatory, inoperative or meaningless."); Cal. Code Civ. Proc. § 1858 (construction is "to be adopted as will give effect to all").

In an effort to manufacture a breach-of-contract claim, Plaintiff mischaracterizes the nature of preauthorization. She repeatedly concludes that

---

[6]     Even if the opt-in form is not clear on this point, it must be construed with the Account Agreement. *See Domann v. Summit Credit Union*, No. 18-167, 2018 WL 4374076, at *5 (W.D. Wis. Sept. 13, 2018); *Ramirez v. Baxter Credit Union*, No. 16-03765, 2017 WL 1064991, at *4 (N.D. Cal. Mar. 21, 2017); *Chambers v. NASA Fed. Credit Union*, 222 F. Supp. 3d 1, 12 (D.D.C. 2016); *Smith v. Bank of Hawaii*, No. 16-513, 2017 WL 3597522, at *5 (D. Haw. Apr. 13, 2017).

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

"APPSN Transactions are actually debited from the account immediately," FAC ¶ 46, that "these withdrawals take place upon initiation," *id*. ¶ 47, and "there are always funds to cover" those transactions as a result, *id.* ¶ 38. Based upon these false conclusions, Plaintiff concludes that American Airlines FCU makes overdraft determinations for debit-card transactions "at the moment of authorization." *Id.* ¶¶ 33 & 35. *See Iqbal*, 556 U.S. at 678-79 ("'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient to state a claim) (citation omitted).

That is not what American Airlines FCU promises in the parties' Account Agreement. Indeed, it is impossible to reconcile Plaintiff's idiosyncratic interpretation of the Account Agreement with the explanation and examples American Airlines FCU provides of how debit cards work, which distinguish between "authorization" or "preauthorization" and presentment and payment. The Account Agreement explains that some debit-card transactions result in the authorization of a "temporary hold" or "preauthorization hold" on a member's account for a specified amount. Account Agreement at 56. As the Account Agreement details, third-party merchants "request a preauthorization hold to cover the final transaction amount." *Id.* This amount "may be in an amount greater than or less than the actual purchase amount." *Id*. at 57. When this occurs, American Airlines FCU has no way of knowing that the merchant has requested a hold amount that differs from the actual amount. *See id.* ("We cannot control how much a merchant asks us to authorize, or when a merchant submits a transaction for payment."); *id.* (explaining that a debit card may be "swiped before your actual transaction amount is known"). It makes sense then that the actual payment is not debited at the time of preauthorization because the actual amount of the charge is not known by American Airlines FCU.

Most important here, the Account Agreement is clear that the temporary preauthorization hold will eventually be removed and replaced by the actual amount charged once the debit-card transaction is presented for payment. *Id.* at 56.

13

In other words, the preauthorization is not the actual transaction. This occurs "[a]t some point after you sign for the transaction" when "it is processed by the merchant and submitted to [American Airlines FCU] for payment." *Id.* at 56-57; *see also id.* at 16 (explaining that "[w]hen [a] restaurant submits its bill for payment (which could be a few days later and for a different amount than the amount of the authorization hold), we will post the transaction to your Account"). It is at this point of presentment that American Airlines FCU knows the actual purchase price of the charge and pays it, including assessing an overdraft fee if the member lacks sufficient funds. *Id.* at 14. Authorization then cannot be the same as payment because they occur at two different times and authorization causes a hold that is subsequently released when the transaction is "presented for payment."[7]

This case has overwhelmingly *more* extensive and explicit disclosures than *Boone v. MB Fin. Bank, N.A.*, 375 F. Supp. 3d 987 (N.D. Ill. 2019), which dismissed an identical claim. The *Boone* court dismissed the plaintiff's breach of contract claim because the "Checking Agreements unambiguously provide[d] that an OD occurs when [the bank] pays, and not merely authorizes, an amount in excess of [the plaintiff's] available balance." *Id.* at 994. The bank's overdraft disclosure provided that "[a]n overdraft occurs when you do not have enough money available in your account to cover a transaction, but we *pay* it anyway." *Id.* at 992 (emphasis added). Focusing on "pay," the *Boone* court agreed with the bank's assertion that an overdraft determination occurs when a "transaction is presented for settlement" (*i.e.*, "[o]n the date [the bank] pays the transaction"), not when a transaction is authorized. *Id.* at 993-94. The court noted that the reason that

---

[7]     To illustrate the absurdity of Plaintiff's position, consider the situation where the authorization amount is greater than the final payment. This often occurs at gas stations, hotels and for rental cars, where the authorization assumes the entire "potential" payment, *i.e.*, the room and honor bar charges. In these situations, if a fee is assessed at the time of authorization but would not be assessed for the lesser amount at the time of payment, then American Airlines FCU would be facing claims from plaintiffs asserting they should not have gotten a fee because they had enough money in their accounts when the transaction was paid.

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

there were "insufficient available funds" on the settlement date was "because the customer in the interim ha[d] chosen to make additional, intervening payments from her account that caused it to have a negative balance." *Id.* at 993; *see also Whittington v. Mobiloil Fed. Credit Union*, No. 16-482, 2018 WL 6582824, at *7 (E.D. Tex. Oct. 26, 2018), *aff'd* 2019 WL 5198474 (5th Cir. Oct. 15, 2019) (finding "[t]he express language of the policy—'an insufficient available account balance may be made at any time between presentation and the Credit Union's midnight deadline'—negates [plaintiff's] interpretation" that "the plain language of the [credit union's] Membership Disclosures misleads members into believing that MCU will assess overdrafts at the time the transaction occurs").

American Airlines FCU suspects Plaintiff will rely on *Roberts v. Capital One, N.A.*, 719 F. App'x 33 (2d Cir. 2017), *Lloyd v. Navy Fed. Credit Union*, No. 17-1280, 2018 WL 1757609 (S.D. Cal. Apr. 12, 2018), and *Lussoro v. Ocean Fin. Fed. Credit Union*, No. 18-7400, 2020 WL 1941236 (E.D.N.Y. Apr. 22, 2020) in their opposition, all other APPSN cases filed by Plaintiff's counsel. *Roberts* and *Lloyd* are inapposite because the contracts in those cases did not "identif[y] the precise moment when [the credit union] pays an overdraft." *Lloyd*, 2018 WL 1757609 at *8; *Roberts*, 719 F. App'x at 35-36 (similar). Whereas here, the Account Agreement informs members that they must "maintain available funds in your Accounts at all times sufficient to pay any . . . item *presented for payment*" and immediately thereafter states that an overdraft is created when there "are not sufficient available funds in your Account to *pay* for a transaction, but [the credit union] pay[s] the transaction anyway." Account Agreement at 14 (emphases added). And the Account Agreement distinguishes the time of authorization from the time of presentment and payment.

*Lussoro* is similarly inapposite because in that case, the contract was ambiguous as to whether an item is "presented," at authorization or payment. 2020 WL 1941236 at *4. Again, here, the Account Agreement only uses the terms

Katten

Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

"present" or "presented" in connection with payment. *See, e.g.*, Account Agreement at 13, 14, 17. For example, it explains that "when you . . . use your Debit card to make a purchase, the merchant or the person or business from whom you made the purchase may not *present* the . . . debit charge to us *for payment* until several days later." *Id.* at 13.

Accordingly, American Airlines FCU's Account Agreement is akin to the agreement in *Boone* because it specifies that overdraft fees are assessed when the transaction is presented for payment, and this is exactly what American Airlines FCU did. Plaintiff incurred overdraft fees because when her debit-card transactions were presented for payment, she had insufficient funds. FAC ¶ 60. As in *Boone*, Plaintiff admits the only reason that these APPSN transactions existed was because she engaged in intervening checking account transactions that reduced her account balance. *Id.* ¶ 23. American Airlines FCU therefore did not breach the parties' contract by assessing an overdraft fee when Plaintiff's available balance was negative at the time her debit-card transactions posted to her account because that is exactly what American Airlines FCU promised to do. This claim should be dismissed.

### 2. American Airlines FCU did not breach the parties' contract by assessing so-called "retry" fees.

Plaintiff alleges American Airlines FCU breached the parties' contract by assessing an NSF fee each time she overdrew her account with an ACH—even if that ACH was a second or third attempt by one of her merchants to collect on a previously rejected withdrawal request. As Plaintiff sees things, the initial ACH withdrawal request and any subsequent "retry" transactions are all "the same item." *See* FAC ¶¶ 62, 67, 79. Thus, although she does not contest the $25 fee she incurred for the overdraft created by the first rejected ACH debit, Plaintiff claims that the fee on the subsequent overdraft created by the second attempt to complete the ACH withdrawal was wrongful. *Id.* ¶¶ 67 & 69. Her argument is foreclosed by the contract documents for two reasons.

16

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

*First*, even assuming a so-called retry is the same item (it is not), the Account Agreement does not state that only one fee may be charged "per item" no matter how many times a third-party merchant presents a transaction for payment. The Agreement states the opposite. It provides American Airlines FCU will "assess a fee for *each item that we . . . do not pay, which would have resulted in an overdraft had we paid it*." Account Agreement at 14 (emphasis added). Plaintiff does not and cannot dispute that if an ACH transaction is presented against an account with an insufficient available balance, it "would have resulted in an overdraft had [American Airlines FCU] paid it." It follows then that for "each item" that American Airlines FCU "do[es] not pay, which would have resulted in an overdraft" had it done so, American Airlines FCU will "assess a fee." *Id.*

*Second*, the Fee Schedule does not say—as Plaintiff seemingly believes—that American Airlines FCU charges one NSF fee "'per item'" or "'per each' item." FAC ¶ 77. It says that American Airlines FCU charges $25 "*Each*." Fee Schedule at 1 (emphasis added). Plaintiff completely ignores that there is nothing modifying the word "Each." The Fee Schedule further states that this "Unpaid Non-Sufficient Funds (NSF)" fee "Includes NSF & Uncollected Funds on checks, ACH or other electronic matters." *Id.*

Neither the Account Agreement nor the Fee Schedule prohibit American Airlines FCU from assessing retry fees. And this Court should reject Plaintiff's lawyer-created understanding of the documents just as two other United States District Courts have recently done. *See Lambert*, 2019 WL 3843064 at \*3-5; *Page v. Alliant Credit Union*, No. 19-5965, 2020 WL 5076690, at \*4 (N.D. Ill. Aug. 26, 2020). Similar to the contract language in this case, the parties' contract in *Lambert* provided "'[a] fee may be assessed . . . for *each returned debit item*.'" 2019 WL 3843064 at \*3 (emphasis added). The *Lambert* court rejected the plaintiff's argument that "two ACH debit requests made by the same merchant, in the same amount, for the same purpose, are the same 'debit item.'" *Id.* Rather, the court

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

17

observed that, "[w]hen Plaintiff's [merchant] 're-presented' the request for payment, it was a new ACH debit item." *Id.* at *4. That was so because the credit union "did not keep Plaintiff's [merchant's] unsuccessful first ACH request," but instead "returned the request" and "waited for [the merchant] to submit another request for payment." *Id.* The *Lambert* court accordingly dismissed the breach of contract claim because the "contract unambiguously provide[d] that 'each' time Navy Federal Credit Union 'returns' a request for payment (a 'debit item') for insufficient funds, a nonsufficient fund fee may be assessed without regards to whether the returned debit item was a re-presentment of a previously rejected request." *Id.* at *5. *See also* Cameron Decl. ¶ 3, Ex. F at 6 (following *Lambert* and finding "the context of the whole agreement leads to the inescapable conclusion that Defendant is clearly empowered to charge more than one NSF fee if a transaction is resubmitted").

Likewise in *Page*, the Northern District of Illinois found that the plaintiff's "stilted reading" of the contract could not serve as the basis for a breach of contract claim. 2020 WL 5076690 at *4. The parties' contract stated: "'Whether the item is paid or returned, your account may be subject to a charge as set forth in the Fee Schedule.'" *Id.* The plaintiff focused "on the singular use of the terms 'charge' and 'item'" to argue that the credit union "can only charge one fee for a single transaction." *Id.* However, the court rejected that argument because the plaintiff was reading certain parts of the contract in isolation (just as Plaintiff does here), and ignored the part that stated, "'[i]f the amount of the item presented for payment exceeds the total available overdraft sources, the item will be returned as non-sufficient funds (NSF) and you will be charged applicable fees.'" *Id.* The court thus dismissed the breach of contract claim and held: "The language in these provisions does not promise members that Alliant will charge just one overdraft fee per transaction. Rather, in the context of the entire Membership Agreement, Alliant charges its members an overdraft fee every time a third-party payee

presents an item for payment against insufficient available funds." *Id.*

The same contract interpretation is warranted in this case. That American Airlines FCU's Account Agreement used the singular "item" does not mean (as Plaintiff suggests) that American Airlines FCU may only assess an NSF fee the first time a merchant presents a transaction for payment. Rather, just as the credit unions in *Lambert* and *Page*, American Airlines FCU may "assess a fee for each item that [American Airlines FCU] . . . do[es] not pay, which would have resulted in an overdraft had [American Airlines FCU] paid it." Account Agreement at 14. Accordingly, the Court should dismiss Plaintiff's "retry" breach of contract claim.

## C.        Plaintiff's UCL Claim Fails as a Matter of Law

Plaintiff asserts one UCL claim based on the unfair and unlawful prongs of the statute. FAC ¶¶ 130-39. Her claim fails for the following reasons.

### 1.        Plaintiff's UCL claim is preempted by federal law.

Plaintiff's UCL claim is preempted to the extent she claims American Airlines FCU's fee practices were somehow "unfair." *See supra* Section IV.A; *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 725 (9th Cir. 2012) (finding UCL claims alleging bank's practice of posting debit-card transactions in high-to-low order was unfair were preempted because they would "prevent[] or significantly interfere[] with a national bank's federally authorized power to choose a posting order").

### 2.        The alleged practices are not unfair.

An act may be considered unfair where it "'is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Davis*, 691 F.3d at 1169 (citation omitted). None of the practices alleged are unfair because American Airlines FCU accurately disclosed its practices under the parties' agreement. *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1177 (2002) (no unfairness where deed of trust permitted loan servicer to charge defaulting mortgagers); *Johnson v. Select Portfolio Servicing, Inc.*, No. 15-9231,

Katten

Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

19

2016 WL 837895, at *4 (C.D. Cal. Mar. 3, 2016) ("unfairness prong . . . does not give the courts a general license to review the fairness of contracts").

### 3.   Plaintiff has not pleaded any violation of another law for an "unlawful" UCL claim.

"To be 'unlawful' under the UCL, [American Airlines FCU's practices] must violate another 'borrowed' law." *Davis*, 691 F.3d at 1168. For this, Plaintiff relies on a claim from her original complaint, but which she removed from the operative FAC—violation of Regulation E. *See* FAC ¶ 138. Although her allegations are not entirely clear, Plaintiff appears to allege that American Airlines FCU's opt-in notice violated Regulation E. *See id.* ¶ 137 (discussing how an opt-in notice must be "accurate, non-misleading and truthful"). But she does not specifically explain *how* American Airlines FCU's notice did this. That is because she cannot.[8]

12 C.F.R. Section 1005.17(d)(1) requires that opt-in notices include "a brief description of the financial institution's overdraft service and the types of transactions for which a fee or charge for paying an overdraft may be imposed, including ATM and one-time debit card transactions." The American Airlines FCU opt-in form does just that. It states American Airlines FCU determines overdrafts when it *pays* a transaction: "An *overdraft* occurs when you do not have enough money available in your checking account to cover a transaction, but we *pay* it anyway." Opt-In Form at 1 (emphases added); *Boone*, 375 F. Supp. 3d at 993-94 (reaching the same conclusion on essentially the same contract language). *See also* Opt-In Form at 1(answering "What fees will I be charged if American Airlines Federal Credit Union *pays* my overdraft?") (emphasis added); *id.* (under both Bounce Protection and Bounce Protection Plus, American Airlines FCU assesses a fee "each time we *pay* an overdraft") (emphasis added). Nowhere in the opt-in form does American Airlines FCU state that it determines overdrafts when it

---

[8]   Presumably, this is why Plaintiff dropped her Regulation E claim when she amended her complaint.

authorizes a debit-card transaction as Plaintiff contends. *See* FAC ¶¶ 37 & 39.

And even if the opt-in form was not clear about when American Airlines FCU makes an overdraft determination, it must be construed with the Account Agreement. *Supra* note 6. The Account Agreement plainly states that American Airlines FCU may assess an overdraft fee when a transaction is presented against an insufficient available balance and paid as an overdraft. Account Agreement at 14. Accordingly, when reading these two documents together, there is only one way to construe the opt-in form's language: American Airlines FCU determines overdrafts when it *pays* a transaction.

Because American Airlines FCU accurately describes how it assesses overdraft fees in its opt-in notice, American Airlines FCU did not violate Regulation E; thus, Plaintiff's unlawful UCL claim fails.

### 4. Plaintiff's UCL claim is derivative of her flawed contract claims.

Plaintiff's UCL claim is not actionable because it is wholly derivative of her breach of contract claims. *See* FAC ¶ 131 ("AAFCU's conduct described herein violates California's Unfair Competition Law"); *id.* ¶¶ 133 & 136 (alleging that the same fee practices underlying her contract claims violate "UCL's 'unfair' prong" and "UCL's unlawful prong"). Because those claims fail, her UCL claim likewise fails. *See, e.g.*, *Hall v. W. Ref. Retail, LLC*, No. 19-855, 2020 WL 3891453, at *8 (C.D. Cal. Apr. 24, 2020) (dismissing UCL claim to the extent it was derivative of plaintiff's other deficient claims); *Velasquez v. Chase Home Fin., LLC*, No. 12-0433, 2012 WL 1378492, at *3 (E.D. Cal. Apr. 19, 2012) (same), *aff'd* 588 F. App'x 676 (9th Cir. 2014).

### 5. Plaintiff's claim is deficient for lack of UCL standing.

A plaintiff does not have standing to bring a claim under the UCL unless she has "suffered injury in fact and lost money or property *as a result of* the [alleged] unfair competition." Cal. Bus. & Prof. Code § 17204 (emphasis added). "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and

Katten
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1   requires a showing of a causal connection or reliance on the alleged
2   misrepresentation." *Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 855 (2008).

3          Here, Plaintiff has failed to plead causation. She claims American Airlines
4   FCU misrepresented the manner in which it would assess overdraft and NSF fees
5   but fails to allege she "actually relied on the misrepresentation or omission." *See*
6   *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1047 (N.D. Cal. 2014). And *even* if
7   she had read the Account Agreement, fee schedule or any other document provided
8   to her, Plaintiff cannot plead reliance because the challenged practices were
9   accurately disclosed. *See Block v. eBay, Inc.*, 747 F.3d 1135, 1140 (9th Cir. 2014)
10  (plaintiff could not have relied on purported misrepresentations where the
11  defendant's practice was accurately disclosed).

### 6. Plaintiff failed to allege she is entitled to equitable remedies under the UCL.

12         Finally, Plaintiff's UCL claim is deficient because she has not alleged (and
13  cannot allege) that she has no adequate legal remedy. Courts have held a plaintiff
14  may not seek equitable remedies under the UCL when there is an adequate remedy
15  at law. *See, e.g.*, *Sonner v. Premier Nutrition Corp.*, No. 18-15890, 2020 WL
16  4882896, at *8 (9th Cir. June 17, 2020) ("Accordingly, because [Plaintiff] fails to
17  establish that she lacks an adequate remedy at law, we hold . . . that the district
18  court did not err in dismissing [Plaintiff's] claims for equitable restitution under
19  the UCL"); *Klaehn v. Cali Bamboo, LLC*, No. 19-1498, 2020 WL 3971518, at *9
20  (S.D. Cal. July 13, 2020) (holding that plaintiffs cannot pursue equitable relief
21  under the UCL because plaintiffs had not plausibly alleged they had no adequate
22  legal remedy). Here, Plaintiff seeks contract damages for the same wrongful
23  conduct that serves as the basis for her UCL claims.

24         In sum, Plaintiff's UCL claim fails for multiple, independent reasons. The
25  Court should dismiss this claim without leave to amend.

### D. Plaintiff's Remaining Claims Also Fail

           **Implied Covenant.** Plaintiff's implied covenant claim is based on the same

22

allegations that underlie her contract claim—*i.e.*, that American Airlines FCU improperly assessed overdraft and NSF fees. FAC ¶ 124. That claim fails no matter which law the Court applies. If the Court applies Texas law, Plaintiff's claim fails because "Texas law does not impose a generalized contractual duty of good faith and fair dealing and, in fact, rejects it in almost all circumstances." *Hux v. S. Methodist Univ.*, 819 F.3d 776, 781 (5th Cir. 2016); *Dawkins v. Chase Bank, N.A.*, No. 13-1308, 2013 WL 4494527, at *4 (N.D. Tex. Aug. 22, 2013).

If the Court applies California law, Plaintiff's claim fails for two reasons. *First*, the implied covenant of good faith and fair dealing "is limited to assuring compliance with the *express terms* of the contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004); *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992). Because the Account Agreement permitted American Airlines FCU to engage in the fee practices challenged by Plaintiff, her implied covenant claim fails as a matter of law. *Second*, because Plaintiff's claim is based on the same allegations and seeks the same relief as the breach of contract claim, it should be "'disregarded as superfluous [because] no additional claim is actually stated.'" *Carstens*, 2017 WL 2654903 at *5 (citation omitted); *see also Hale v. Sharp Healthcare*, 183 Cal. App. 4th 1373, 1388 (2010). Plaintiff's implied covenant claim should accordingly be dismissed.

**Money Had and Received.** Plaintiff's claim for money had and received should be dismissed because it rises and falls with her other claims. *See Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1560 (2007); *Villareal v. Chamberlain Coll. of Nursing & Health Scis., Inc.*, No. 19-300, 2019 WL 4736488, at *4 (S.D. Tex. Sept. 27, 2019). Because her claims for breach of contract and violation of the UCL fail for the reasons discussed herein, Plaintiff's claim for money had and received fails as well.[9]

---

[9]   If Texas law applies, Plaintiff's claim also fails because "[q]uasi-contract

23

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

## V.   CONCLUSION

For the foregoing reasons, the Court should grant this motion and dismiss Plaintiff's FAC without leave to amend.

Respectfully submitted,

Dated: September 8, 2020          **KATTEN MUCHIN ROSENMAN LLP**

By:  _____/s/Stuart M. Richter_____
Attorneys for Defendant
American Airlines Federal Credit Union

recovery is generally precluded where an express, valid agreement covers the subject matter of the parties' dispute." *Villareal*, 2019 WL 4736488 at *3.

24