Stuart M. Richter (CA 126231)
stuart.richter@katten.com
Andrew J. Demko (CA 247320)
andrew.demko@katten.com
Camille A. Cameron (CA 307859)
camille.cameron@katten.com
Ashley T. Brines (CA 322988)
ashley.brines@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: 310.788.4400
Facsimile: 310.788.4471

Attorneys for Defendant
American Airlines Federal Credit Union

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA VARGA, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN AIRLINES FEDERAL CREDIT UNION, and DOES 1-100,<br><br>Defendants. | Case No.   2:20-cv-04380-DSF-KS<br><br>**DEFENDANT AMERICAN AIRLINES FEDERAL CREDIT UNION'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF SYLVIA VARGA'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**<br><br>**Hon. Dale S. Fischer** |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

On September 8, 2020, defendant American Airlines Federal Credit Union ("American Airlines FCU") moved to dismiss the claims alleged in plaintiff Sylvia Varga's ("Plaintiff") First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 23.[1] American Airlines FCU hereby submits the following order in support of its motion, attached hereto as **Exhibit A**, in which the Tennessee Court of Appeals recently affirmed the dismissal of the same "retry" breach of contract claims that Plaintiff asserts here: *Saunders v. Y-12 Fed. Credit Union*, No. E2020-00046-COA-R3-CV, 2020 WL 6499558, at *3-6 (Tenn. Ct. App. Nov. 5, 2020).[2]

Respectfully submitted,

Dated: November 13, 2020            **KATTEN MUCHIN ROSENMAN LLP**

By:    /s/Stuart M. Richter
Attorneys for Defendant
American Airlines Federal Credit Union

---

[1] The motion was fully briefed as of October 26, 2020. *See* Dkt. Nos. 24 & 25. The Court took it under submission on November 6, 2020. *See* Dkt. 27.

[2] The Court may also take judicial notice of this order pursuant to Rule 201 of the Federal Rules of Evidence. *See* Dkt. No. 23-9 at 4 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006)).

# EXHIBIT A

2020 WL 6499558
Only the Westlaw citation is currently available.

SEE COURT OF APPEALS RULES 11 AND 12

Court of Appeals of Tennessee,
AT KNOXVILLE.

Daphne SAUNDERS
v.
Y-12 FEDERAL CREDIT UNION

No. E2020-00046-COA-R3-CV
|
August 18, 2020 Session
|
FILED 11/05/2020

**Appeal from the Circuit Court for Anderson County, No. B9LA0120,** Donald R. Elledge**, Judge**

**Attorneys and Law Firms**

Michael J. Wall, J. Gerard Stranch, IV, and Martin F. Schubert, Nashville, Tennessee; Lynn A. Toops, Indianapolis, Indiana; and Christopher D. Jennings, Little Rock, Arkansas, for the appellant, Daphne Saunders.

Brandon J. Wilson, Royal Oak, Michigan, and Lawrence F. Giordano and Jared S. Garceau, Knoxville, Tennessee, for the appellee, Y-12 Federal Credit Union.

Thomas R. Frierson, II, J., delivered the opinion of the court, in which D. Michael Swiney, C.J., and Kristi M. Davis, J., joined.

**OPINION**

Thomas R. Frierson, II, J.

 ***1** The plaintiff, Daphne Saunders, filed a complaint against Y-12 Federal Credit Union ("Y-12"), alleging breach of the parties' banking contract. Ms. Saunders asserted that Y-12 had charged excessive fees for items presented for payment from Ms. Saunders's account that were returned due to insufficient funds. Ms. Saunders also alleged breach of the covenant of good faith and fair dealing and asserted that Y-12 had been unjustly enriched by charging excessive fees. The trial court dismissed Ms. Saunders's claims with prejudice, finding that Ms. Saunders had failed to state a claim upon which relief could be granted. Ms. Saunders has appealed. Discerning no reversible error, we affirm.

I. Factual and Procedural Background

On August 16, 2019, Ms. Saunders filed a "Class Action Complaint" in the Anderson County Circuit Court ("trial court") against Y-12. Ms. Saunders asserted that she was filing the complaint on her own behalf as well as on behalf of those "similarly situated." Ms. Saunders claimed that as a checking account customer of Y-12, she had, on occasion, been charged multiple overdraft fees concerning a single item presented for payment in violation of the parties' contract terms.

According to Ms. Saunders, her account agreement with Y-12 provided that when an item had been presented for payment and there were insufficient funds in the account to pay it, Y-12 could either pay or reject the item and charge a single overdraft fee of $32.00. Despite the contract language, Ms. Saunders alleged that Y-12 regularly charged two or more $32.00 overdraft fees on a single item in order to "unlawfully maximize[ ] its already profitable NSF [non-sufficient funds] Fee revenue by using deceptive practices that also violate the terms of its account documents." Ms. Saunders provided exemplars from her accounts of electronic payment charges to specific payees that were rejected by Y-12 on multiple dates, allegedly with an overdraft fee charged for each attempt to process, despite the fact that Ms. Saunders had not requested that the items be reprocessed.

Ms. Saunders further asserted that "if Y-12 reprocesses an instruction for payment, it is still the same item. Y-12's reprocessing is simply another attempt to effectuate an accountholder's original request for payment." In support of her contention, Ms. Saunders provided examples from other banks' account contracts, which included such language as "[b]ecause we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item." Ms. Saunders averred that her contract with Y-12 contained no such language.

Ms. Saunders claimed that a class should be certified that consisted of "[a]ll citizens of Tennessee who were Y-12 Federal Credit Union checking account holders who were charged multiple NSF Fees on the same item." In addition to breach of contract, Ms. Saunders asserted claims of unjust

enrichment and breach of the covenant of good faith and fair dealing on behalf of herself and the class. Ms. Saunders sought certification of the class, damages, pre- and post-judgment interest, and attorney's fees.

Ms. Saunders attached a copy of her account agreement with Y-12 ("the Contract") to her complaint. The Contract states in pertinent part:

> **Payment of Overdrafts**. If, on any day, the available funds in your share or deposit account are not sufficient to pay the full amount of a check, draft, transaction, or other item posted to your account plus any applicable fee ("overdraft"), we may pay or return the overdraft. The Credit Union's determination of an insufficient available account balance may be made at any time between presentation and the Credit Union's midnight deadline with only one (1) review of the account required. We are not required to notify you if your account does not have sufficient available funds to pay an overdraft. Your account may be subject to a charge for each overdraft regardless of whether we pay or return the overdraft.

**\*2** The Contract further provides that the fee for such an overdraft will be "$32.00 each."

On October 18, 2019, Y-12 filed a motion to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6). Y-12 asserted that Ms. Saunders's claims were preempted by the Federal Credit Union Act and the Truth in Savings Act as well as their implementing regulations. Y-12 also asserted that Ms. Saunders's complaint failed to state a claim for breach of contract because she did not

> and cannot identify any language in the Membership and Account Agreement promising that Y-12 will assess an NSF fee only "once," regardless of the number of times a merchant makes a payment request against [Ms. Saunders's] account without money available to pay for it, or that the term "each" excludes a second or third payment request from the same merchant. Indeed, the Membership and Account Agreement says just the opposite: "[i]f, on any day, the available funds in your share or deposit account are not sufficient to pay the full amount of a check, draft, transaction, or other item posted to your account plus any applicable fee ("overdraft"), we may ... return the overdraft.... Your account may be subject to a charge <u>for each overdraft</u> regardless of whether we pay or return the overdraft."

Y-12 further argued that Ms. Saunders could not state a claim for breach of the covenant of good faith and fair dealing in the absence of a breach of contract. In addition, Y-12 posited that Ms. Saunders could not state a claim for unjust enrichment because the parties had a valid and enforceable contract. Y-12 thus sought dismissal of Ms. Saunders's claims with prejudice. Ms. Saunders filed a response in opposition to the motion.

On December 16, 2019, the trial court entered an order dismissing Ms. Saunders's claims, determining that her complaint failed to state a claim upon which relief could be granted. The court incorporated its attached memorandum opinion, wherein the court found, *inter alia*, that pursuant to paragraph 14, subparagraph A of the Contract, if an item were presented for payment and there were insufficient funds in the account to pay the item, Y-12 could pay or return the item. The court found that the Contract also provided that the account "may be subject to a charge for each overdraft" and that the overdraft fee would be $32.00 for each item. The court determined that the Contract was clear and unambiguous and had not been breached by Y-12. Moreover, the court concluded that *Lambert v. Navy Fed. Credit Union*, No. 1:19-CV-103-LO-MSN, 2019 WL 3843064, at \*4 (E.D. Va. Aug. 14, 2019), was directly on point concerning this issue. Ms. Saunders timely appealed.

## II. Issues Presented

Ms. Saunders presents three issues for this Court's review, which we have restated slightly as follows:

1. Whether the trial court erred by determining that the Contract, which authorizes "a charge for each overdraft," unambiguously allows Y-12 to charge multiple fees for a single item such that Ms. Saunders's breach of contract claim must fail under any set of facts.

2. Whether the trial court erred by declining to determine that Y-12 had violated its contractual duty of good faith and fair dealing by charging an additional fee when it reprocessed the same item and rejected it.

**\*3** 3. Whether the trial court erred by declining to determine that Ms. Saunders had stated an unjust enrichment claim in the alternative to her breach of contract claim.

### III. Standard of Review

As our Supreme Court has elucidated concerning a [Tennessee Rule of Civil Procedure 12.02(6)](#) motion to dismiss:

> The sole purpose of a [Tennessee Rule of Civil Procedure 12.02(6)](#) motion to dismiss is to test the sufficiency of the complaint, not the strength of the plaintiff's evidence. *[Doe v. Sundquist](#), 2 S.W.3d 919, 922 (Tenn. 1999);* [*Riggs v. Burson*, 941 S.W.2d 44, 47 (Tenn. 1997)](#). When reviewing a dismissal of a complaint under [Rule 12.02(6)](#), this Court must take the factual allegations contained in the complaint as true and review the trial court's legal conclusions *de novo* without giving any presumption of correctness to those conclusions. *See, e.g., [Doe v. Sundquist](#), 2 S.W.3d at 922.* Because a motion to dismiss a complaint under [Rule 12.02(6)](#) challenges only the legal sufficiency of the complaint, courts should grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *See, e.g., [Trau-Med of Am., Inc. v. Allstate Ins. Co.](#), 71 S.W.3d 691, 696 (Tenn. 2002).*

[*Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 710 (Tenn. 2003)](#). We review the trial court's interpretation of a written agreement *de novo* with no presumption of correctness. *See [Ray Bell Constr. Co., Inc. v. State, Tenn. Dep't of Transp.](#), 356 S.W.3d 384, 386 (Tenn. 2011).*

### IV. Breach of Contract Claim

Ms. Saunders argues that the trial court erred by determining that the Contract unambiguously permits Y-12 to charge multiple fees for a "single item" such that Ms. Saunders's breach of contract claim must fail under any set of facts. In its memorandum opinion, the trial court found that the language of the Contract was clear and unambiguous in stating that the overdraft fee would be charged "each time." As such, the court determined that Ms. Saunders had failed to state a claim for breach of contract.

In order to successfully assert a claim for breach of contract, a plaintiff must show "the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *See [Fed. Ins. Co. v. Winters](#), 354 S.W.3d 287, 291 (Tenn. 2011).* When a plaintiff "cannot point to terms in the Agreement that would lead a factfinder to find a breach of contract," dismissal of the breach of contract claim is proper. *See, e.g., [Roby v. Nationstar Mortg., LLC](#), No. W2019-00730-COA-R3-CV, 2020 WL 2315784, at \*7 (Tenn. Ct. App. May 11, 2020).*

In this matter, the parties do not dispute that the Contract was valid and enforceable. Ms. Saunders posits, however, that pursuant to the language of the Contract, her account could only be subject to a single charge "for each overdraft regardless of whether we pay or return the overdraft." Ms. Saunders thus contends that by charging multiple fees for "the same overdraft," Y-12 has breached the terms of the Contract, damaging her thereby with excessive fee charges. Y-12 counters that the Contract unambiguously defines the term, "overdraft," as "a check, draft, transaction, or other item posted to your account plus any applicable fee" when "the available funds in your share or deposit account are not sufficient to pay the full amount." As such, Y-12 postulates that an item or transaction that has been returned and then resubmitted for payment by the payee constitutes an overdraft each time it is submitted and the funds in the account are

insufficient. Y-12 further asserts that the overdraft is subject to an overdraft fee each time whether it is paid or returned.

**\*4** As this Court has previously explained:

> In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002) (citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." *Planters Gin Co.*, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. *Planters Gin Co.*, 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." *Id.* (quoting 17 Am. Jur. 2d, *Contracts*, § 245).
>
> This Court's initial task in construing the Contract at issue is to determine whether the language of the contract is ambiguous. *Planters Gin Co.*, 78 S.W.3d at 890. If the language is clear and unambiguous, the literal meaning of the language controls the outcome of the dispute. *Id.* A contract is ambiguous only when its meaning is uncertain and may fairly be understood in more than one way. *Id.* (emphasis added). If the contract is found to be ambiguous, we then apply established rules of construction to determine the intent of the parties. *Id.* Only if ambiguity remains after applying the pertinent rules of construction does the legal meaning of the contract become a question of fact. *Id.*

*Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693, 698-99 (Tenn. Ct. App. 2005). This Court has further elucidated:

> In determining whether an ambiguity exists in a contract, we are guided by the following principles:
>
> Contractual language is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons could come to different conclusions as to the meaning of the contract. However, an ambiguity arises in a contract only when contractual terms are susceptible to fair and honest differences, and when both of the interpretations advanced are reasonable.
>
> A word or expression in the contract may, standing alone, be capable of two meanings and yet the contract may be unambiguous. Thus, in determining whether or not there is such an ambiguity as calls for interpretation, the whole instrument must be considered, and not an isolated part, such as a single sentence or paragraph. The language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.

**\*5** 77 C.J.S. Contracts § 304 (citations omitted).

*Fisher v. Revell*, 343 S.W.3d 776, 779-80 (Tenn. Ct. App. 2009).

To reiterate, the Contract language at issue in this matter provides in relevant part:

> **Payment of Overdrafts**. <u>If, on any day, the available funds in your share or deposit account are not sufficient to pay the full amount of a check, draft, transaction, or other item posted to your account plus any applicable fee ("overdraft"), we may pay or return the overdraft</u>. The Credit Union's determination of an insufficient available account balance may be made at any time between presentation and the Credit Union's midnight deadline with only one (1) review of the account required. We are not required to notify you if your account does not have sufficient available funds to pay an overdraft. <u>Your account may be subject to a</u>

charge for each overdraft regardless of whether we pay or return the overdraft.

(Emphasis added.) The Contract further sets forth a fee schedule, which lists an "Over-Draft fee" of "$32.00 each."

Based on the plain, clear, and unambiguous language of the Contract, an overdraft occurs when a "check, draft, transaction, or other item ... plus any applicable fee" posts to an account with insufficient funds. The overdraft may either be paid or returned by Y-12, and a fee may be charged in either event. The fee schedule states that the fee charged for such an overdraft will be $32.00 <u>each</u>" (emphasis added). Ergo, in Ms. Saunders's case, when she attempted to pay a bill through her Y-12 account and the transaction was rejected for insufficient funds, she was charged a fee. When the merchant made a subsequent attempt to collect the funds and submitted another request for payment, Y-12 again returned the transaction for insufficient funds and charged another fee. Such action does not constitute a breach of the clear terms of the Contract.

Although Ms. Saunders postulates that various ambiguities exist within the language contained in the Contract, we determine that her interpretations are not reasonable. *See, e.g.*, *Fisher*, 343 S.W.3d at 779-80. For example, Ms. Saunders contends that a merchant's resubmission for payment of a transaction that was previously rejected due to insufficient funds in the subject account should still be considered the same or a singular "item." However, the Contract specifically provides that a fee may be charged for each <u>overdraft</u>, or each time a "<u>check</u>, <u>draft</u>, <u>transaction</u>, or other <u>item</u> ... plus any applicable fee" posts to an account with insufficient funds and is paid or rejected by Y-12. In other words, each time any type of transaction is submitted by the merchant for payment and there are insufficient funds in the account, thus constituting an overdraft, an overdraft fee may be charged to the customer. This is precisely what occurred in Ms. Saunders's case.

Ms. Saunders has not alleged that Y-12 improperly evaluated the available funds in her account or in any other manner incorrectly processed the transactions that were submitted or resubmitted by the merchant for payment. Inasmuch as the Contract expressly provides that a fee may be charged by Y-12 for each <u>overdraft</u>, as that term is defined in the Contract, Ms. Saunders has failed to state a claim for breach of contract based on the fees charged by Y-12 as alleged in her complaint.[1] " 'Only if ambiguity remains after the court applies the pertinent rules of construction does [the legal meaning of the contract] become a question of fact' appropriate for a jury." *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002). We therefore affirm the trial court's dismissal of Ms. Saunders's breach of contract claim.

[1] Although Ms. Saunders urges us to consider various trial court decisions from Tennessee and other jurisdictions, these decisions are not mandatory authority for this Court because they were entered by inferior courts of this State and other trial courts. *See Thompson v. State*, 958 S.W.2d 156, 173 (Tenn. Crim. App. 1997) (" '[I]t is a controlling principle that inferior courts must abide the orders, decrees and precedents of higher courts. The slightest deviation from this rigid rule would disrupt and destroy the sanctity of the judicial process.' ") (quoting *State v. Irick*, 906 S.W.2d 440, 443 (Tenn. 1995)). In addition, various federal court decisions, also urged by Ms. Saunders, are not mandatory authority for this Court. *See Young v. City of LaFollette*, No. E2013-00441-COA-R9-CV, 2014 WL 545486, at *6 (Tenn. Ct. App. Feb. 10, 2014) (explaining that federal district and intermediate appellate court decisions are not binding on this Court). Moreover, even if these decisions constituted binding precedent, they would be of little value to our analysis because the language in the agreements analyzed therein differs from the language of the Contract at issue in this case.

V. Duty of Good Faith and Fair Dealing

**\*6** Ms. Saunders also asserts that the trial court erred by declining to determine that Y-12 had violated its contractual duty of good faith and fair dealing by charging "excessive" overdraft fees. However, as this Court has previously explained:

In the absence of a breach of contract claim, Plaintiff's [claim of] breach of implied covenant of good faith and fair dealing must also fail. It is true that Tennessee courts imply a duty of good faith to the enforcement and performance of contracts. *See Dick Broad. Co. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 660-61 (Tenn. 2013). This duty has two parts: (1) it ensures the parties' reasonable expectations are honored, and (2) it protects their rights to receive the

benefits of the agreement. [*Barnes & Robinson Co. v. Onesource Facility Servs., Inc.*, 195 S.W.3d 637, 642-43 (Tenn. Ct. App. 2006)](). However, a claim for a breach of this implied duty "is not a stand-alone claim; rather, it is part of an overall breach of contract claim." [*Jones v. LeMoyne-Owen Coll.*, 308 S.W.3d 894, 907 (Tenn. Ct. App. 2009)](). Accordingly, in the absence of her breach of contract claim, the trial court rightfully dismissed Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

[*Roby*, 2020 WL 2315784, at *7]() (other internal citations omitted). Similarly, in the case at bar, because Ms. Saunders's breach of contract claim was properly dismissed, her claim for breach of the contractual duty of good faith and fair dealing was also properly dismissed.

### VI. Unjust Enrichment

Finally, Ms. Saunders contends that the trial court erred by declining to determine that she had stated an unjust enrichment claim as an alternative to her breach of contract claim. As our Supreme Court has instructed concerning such a claim:

> Unjust enrichment is a quasi-contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation where one does not exist. [*Paschall's Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 154-55 (1966)](). Courts will impose a contractual obligation under an unjust enrichment theory when: (1) there is no contract between the parties or a contract has become unenforceable or invalid; and (2) the defendant will be unjustly enriched absent a quasi-contractual obligation.

[*Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998)](). In the instant action, inasmuch as the parties maintained a valid and enforceable contract, the trial court properly dismissed Ms. Saunders's claim for unjust enrichment. *See* [*Daugherty v. Sony Elecs., Inc.*, No. E2004-02627-COA-R3-CV, 2006 WL 197090, at *6 (Tenn. Ct. App. Jan. 26, 2006)]() ("Because Plaintiff's complaint establishes the existence of a valid and enforceable contract between Plaintiff and Sony, Plaintiff failed to state a claim upon which relief can be granted for unjust enrichment, and the Trial Court properly dismissed this claim.").

### VII. Conclusion

For the foregoing reasons, we affirm the trial court's judgment. Costs on appeal are assessed to the appellant, Daphne Saunders. This case is remanded to the trial court for collection of costs assessed below.

**All Citations**

Slip Copy, 2020 WL 6499558

---

**End of Document**  © 2020 Thomson Reuters. No claim to original U.S. Government Works.