Taras Kick, CA Bar No. 143379
Taras@kicklawfirm.com
Jeffrey Bils, CA Bar No.  301629
**THE KICK LAW FIRM, APC**
815 Moraga Drive
Los Angeles, California 90049
Tel: (310) 395-2988 Fax: (310) 395-2088

Jeffrey D. Kaliel, CA Bar No. 238293
jkaliel@kalielpllc.com
Sophia G. Gold, CA Bar No. 307971
sgold@kalielgold.com
**KALIEL GOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783

Kevin P. Roddy, CA Bar No. 128283
kroddy@wilentz.com
**WILENTZ, GOLDMAN & SPITZER, P.A.**
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ  07095
Tel:  (732) 636-8000 Fax:  (732) 726-6686

Attorneys for Plaintiff
Sylvia Varga and the Putative Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA VARGA, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN AIRLINES FEDERAL CREDIT UNION, and DOES 1-100,<br><br>Defendants. | **CASE NO.:** 2:20-CV-04380-DSF-KS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br><u>Hearing</u><br>Date:  December 13, 2021<br>Time: 1:30 p.m.<br>Place: Courtroom 7D<br>**Hon. Dale S. Fischer** |

# **TABLE OF CONTENTS**

I.     SUMMARY ................................................................................. 1

II.    THE HISTORY OF THIS CASE. .................................................. 3

     A.    The Law and Motion Practice Which Occurred in This Case .............. 3

     B.    The Formal Discovery Performed in this Case. ................................... 4

     C.    The Two Mediations ................................................................. 4

III.   TERMS OF THE SETTLEMENT ................................................ 5

     A.    Class Definitions ................................................................... 5

     B.    The Settlement Amount ......................................................... 5

     C.    Payments to Class Members. ................................................. 6

     D.    *Cy Pres* Distribution ........................................................... 6

IV.   ATTORNEYS' FEES, LITIGATION COSTS, SERVICE AWARDS, AND ADMINISTRATOR COSTS. ............................................... 7

V.    SERVICE AWARD FOR THE CLASS REPRESENTATIVE .................. 13

VI.   ARGUMENT ......................................................................... 15

     A.    The Settlement Should Be Finally Approved ...................................... 15

          1.    The Settlement Is Reasonable, Fair, and Adequate Given the Strength of the Case and the Risks of Litigation. ..................... 17

          2.    The Settlement Was Negotiated at Arm's Length And The Experience and Views of Counsel Further Support It. ............. 19

          3.    The Reaction of Class Members .............................................. 20

          4.    The Extent of Discovery Completed, the Stage of the Proceedings, and the Adequacy of the Representation by the Class Representative and Class Counsel ................................. 20

          5.    The Settlement Treats Class Members Equally ....................... 21

          6.    The Remaining Rule 23(e) Factors ........................................ 22

     B.    The Settlement Class Should Be Finally Certified ............................. 22

VII.  CONCLUSION ...................................................................... 23

-i-

# TABLE OF AUTHORITIES

**Federal Court Opinions**

*Beaver v. Tarsadia Hotels,*  No. 11-CV-01842-GPC-KSC,
   2017 WL 4310707 (S.D. Cal., Sept. 28, 2017) .................................................. 8

*Behrens v. Wometco Enters., Inc.,*
   118 F.R.D. 534 (S.D. Fla. 1988), aff'd 899 F.2d 21 (11th Cir. 1990) .......... 9, 17

*Bellinghausen v. Tractor Supply Co.,*
   306 F.R.D. 245 (N.D. Cal. 2015) ....................................................................... 17

*Birch v. Office Depot, Inc.,* Case No. 06cv1690 DMS (WMC),
   Doc. No. 48, ¶ 13 (S.D. Cal. Sept. 28, 2007) .................................................. 8-9

*Bodnar v. Bank of America, No. 5:14-cv-03224-EGS*
   (E.D. Pa.) .......................................................................................................... 10

*Bowens v. Mazuma Credit Union,* W.D. Mich.,
   Case No. 1:15-cv-01208-GJQ-RSK, Docket No. 70 (Oct. 23, 2019)  ............... 14

*Browne v. Am. Honda Motor Co.,*
   No. CV 09-06750 MMM (DTBx), 2010 U.S. Dist. LEXIS 145475 (C.D. Cal.
   July 29, 2010) ................................................................................................... 20

*Churchill Vill., L.L.C. v. Gen. Elec.,*
   361 F.3d 566 (9th Cir. 2004) ............................................................................. 20

City of *Detroit v. Grinnell Corp.,*
   356 F. Supp. 1380 (S.D.N.Y. 1972), aff'd in part, rev'd on other grounds, 495
   F.2d 448 (2d Cir. 1974) ..................................................................................... 17

*Class Plaintiffs v.* City of *Seattle,*
   955 F.2d 1268 (9th Cir. 1992) ........................................................................... 15

*Coleman-Weathersbee v. Michigan State University Federal Credit Union,*
   E.D. Mich., Case No. 5:19-cv-11674-JEL-DRG. Docket No. 33
   (July 29, 2020) .................................................................................................. 14

*Dennis v. Kellogg Co.,*
   No. 09–CV– 1786–L (WMc), 2013 WL 6055326 ............................................ 13

-ii-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS SETTLEMENT
CASE NO. 2:20-CV-04380-DSF-KS

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ............................................................... 23

*Garner v. State Farm Mut. Auto. Ins. Co.*
  (N.D. Cal. Apr. 22, 2010) 2010 WL 1687832 .................................. 14

*Glass v. UBS Fin. Servs., Inc.*,
  No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ................ 13

*Gunter v. United Federal Credit Union*,
  United States District Court for the District of Nevada,
  Case No. 3:15-cv-00483-MMD-WGC ............................................. 10

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ..................................................... 16, 23

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) .............................................................. 12

*Harris v. Vector Mktg. Corp.*,
  No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .............. 19

*Holt v. Community America Credit Union*, No. 4:19-CV-00629-FJG
  (W.D. Mo.) ..................................................................................... 10

*In re Austrian and German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) .............................................. 18

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935
  (9th Cir. 2010) ................................................................................... 7

*In re Checking Account Overdraft Litig.*,
  No. 1:09- MD-02036-JLK, 2020 U.S. Dist. LEXIS142012 (S.D. Fla. Aug. 10,
  2020) .............................................................................................. 10

*In re High-Tech Emple. Antitrust Litig.*,
  2014 U.S. Dist. LEXIS 184827 (N.D. Cal. May 16, 2014) ............... 13

*In re Lloyds' Am. Trust Fund Litig.*,
  2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .............................. 21

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454

-iii-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS SETTLEMENT
CASE NO. 2:20-CV-04380-DSF-KS

(9th Cir. 2000) ................................................... 18

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
    No. 4:14-MD-2541-CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ........... 13

*In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373
    (9th Cir. 1995) .................................................... 7, 15-16

*In re Toys R US FACTA Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014) .................................. 18

*In re Vitamins Antitrust Litig.*,
    2000 WL 1737867 (D.D.C. Mar. 31, 2000) ........................ 21

*Ingalls v. Hallmark Mktg. Corp.*, 08cv4342 VBF (Ex), Doc. No. 77
    (C.D. Cal. Oct. 16, 2009) ....................................... 8

*Johnson v. Community Bank*, N.A., No. 12-cv-01405-RDM
    (M.D. Pa.) ....................................................... 10

*Keegan v. Am. Honda Motor Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012) ................................. 23

*Ketner v. SECU Maryland*, Civil No.:1:15-CV-03594-CCB
    (D. MD. 2017) ................................................... 10

*Knight v. Red Door Salons, Inc.*, NO. 08-01520 SC,
    2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ( ..................... 8

*Lambert v. Navy Fed. Credit Union*, No. 1:19-cv-
    103-LO-MSN, 2019 U.S. Dist. LEXIS138592, at *3 (E.D. Va.) .......... 10

*Lane v. Campus Federal Credit Union*, Case No. 3:16-cv-00037
    (M.D. La. 2017) ................................................. 10

*Liggio v. Apple Federal Credit Union*, No. 1:18- cv-01059-LO-MSN
    (E.D. Va.) ...................................................... 10

*Lucy Chi v. University of Southern California, et al.*, C.D. Cal.,
    Case No. 2:18-cv-4258-SVW-GJS, Docket No. 197 (July 12, 2021) ........ 13

*Martel v. Valderamma*,
    2015 U.S. Dist. LEXIS 49830 *17 (C.D. Cal. 2015) (C.D. Cal. 2015) ......... 18

-iv-

*Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ............................................................. 7

*Ochinero v. Ladera Lending*,
  No. SACV 19-1136 JVS (ADSx), 2021 U.S. Dist. LEXIS 192406 (C.D. Cal.
  July 19, 2021) ..................................................................................... 7

*Officers of Justice v. Civil Service Commission of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ............................................................. 16

*Pingston-Poling v. Advia Credit Union*, W.D. Mich.,
  Case No. 1:15-cv-01208-GJQ-RSK, Docket No.148-12 (October 20, 2019) ... 14

*Poertner v. Gillette Co.*,
  618 Fed. Appx. 624 (11th Cir. 2015) ................................................... 8

*Reed v. 1-800 Contacts, Inc.*
  (S.D. Jan. 2, 2014) 2014 WL 29011 ............................................. 14, 15

*Rippee v. Boston Mkt. Corp.*, Case No. 05cv1359 BTM (JMA),
  Doc. No. 70 (S.D. Cal. Oct. 10, 2006) ................................................. 9

*Rodriguez v. W. Publishing*,
  563 F.3d 948 (9th Cir. 2009) ............................................................. 19

*Rosales v. El Rancho Farms*,
  No. 1:09-CV-00707-AWI, 2015 WL 4460635 (E.D. Cal. July 21, 2015) ........ 20

*Ruiz v. XPO Last Mile, Inc.*,
  No. 5-CV-2125 JLS (KSC), 2017 WL 6513962 (S.D. Cal. Dec. 20, 2017) ....... 7

*Schofield v. Delta Air Lines, Inc.*,
  No. 18-cv-00382-EMC, 2019 U.S. Dist. LEXIS 31535
  (N.D. Cal. Feb. 27, 2019) ................................................................. 20

*Schulte v. Fifth Third Bank*, No. 09-cv-6655
  (N.D. Ill.) ........................................................................................ 10

*Singer v. Becton Dickinson & Co.*, No. 08-CV-821 - IEG (BLM),
  2009 U.S. Dist. LEXIS 114547 (S.D. Cal. Dec. 9, 2009) ....................... 13

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301, 1311 (9th Cir. 1990) ................................................................. 13

*Smith v. Bank of Hawaii*, D. Haw., Case No. 1:16-CV-00513 JMS-WRP,
    Docket No. 233 (Dec. 22, 2020) ........................................................................ 13

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .............................................................................. 23

*Staton v. Boeing*, 327 F.3d 938, 967 (9th Cir. 2003) ............................................... 7

*Story v. SEFCU*, N.D.N.Y., Case No. 1:18-CV-764 (MAD/DJS),
    Docket No. 77 (Feb. 25, 2021) ........................................................................... 14

*Towner v. 1st MidAmerica Credit Union, No. 3:15- cv-1162*
    (S.D. Ill. 2017) ................................................................................................... 10

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .......................................................... 7, 9, 11, 12

*Wolfgeher v. Commerce Bank*, N.A., No. 1:09- MD-02036-JLK
    (S.D. Fla.) ........................................................................................................... 10

*Zucker v. Occidental Petroleum Corp.*,
    192 F.3d 1323 (9th Cir. 1999) ............................................................................. 7

**State Cases**

*Cellphone Termination Fee Cases*
    (2010) 186 Cal.App.4th 1380 ............................................................................ 14

*Ketchum v. Moses*
    (2001) 24 Cal.4th 1122 ........................................................................................ 9

*Laffitte v. Robert Half Int'l Inc.*
    (2016) 1 Cal.5th 480 ............................................................................. 10-11, 11

**State Statutes**

Cal. Bus. & Prof. Code § 17200, et seq. ................................................................... 3

**Rules**

Federal Rules of Civil Procedure 12 ......................................................................... 3

Federal Rule of Civil Procedure 23 ................................................................. *Passim*

Federal Rule of Civil Procedure 26 ........................................................................ 4

**Other**

Federal Judicial Center,

    Managing Class Action Litigation: A Pocket Guide for Judges,

    3d. Ed., 35 (2010) ...................................................................................... 8

Leubsdorf, *The Contingency Factor in Attorney Fee Awards* (1981)

    90 Yale L.J. 473, 480 ............................................................................. 12

Posner, *Economic Analysis of Law*

    (4th ed. 1992) pp. 534, 567 .................................................................. 12

Principles of the Law of Aggregate Litigation,

    The American Law Institute, Mar 1, 2010 § 3.13............................... 8

-vii-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS SETTLEMENT
CASE NO. 2:20-CV-04380-DSF-KS

# I.     **SUMMARY**

This is a putative class action in which Plaintiff alleges that Defendant American Airlines Federal Credit Union ("AAFCU" or "Defendant") imposed certain overdraft fees and Non-Sufficient Funds ("NSF") fees which its contracts did not allow it to charge.  AAFCU disputes this.

After law and motion practice, formal discovery, and two separate mediations with The Hon. Edward A. Infante (Ret.), the parties reached a proposed settlement, subject to this Honorable Court's review and approval.  The Value of the Settlement is $1,765,807, comprised of AAFCU paying $1,590,000 in cash and waiving uncollected at-issue fees in the amount $175,807.  The aggregate possible class damages at issue in this case are $2,652,075. (Declaration of Arthur Olsen ["Olsen Decl."] ¶¶ 7 and 9.)   This means that the proposed settlement represents approximately 66.5% of the possible damages, an excellent result. A true and correct copy of the fully executed Settlement Agreement ("SA") is attached as Exhibit A to the Declaration of Taras Kick ("Kick Decl.").

This Court granted preliminary approval to the proposed settlement in an Order dated August 17, 2021, finding preliminarily that the class as defined in the proposed Settlement agreement meets all of the requirements for certification of a settlement class under the Federal Rules of Civil Procedure and applicable case law (Preliminary Approval Order ["Order"], Docket No. 54, ¶ 2), that the proposed settlement falls within the range of reasonableness for potential final approval  (Docket No. 54, ¶8), and that the proposed settlement is the product of arm's length negotiations by experienced counsel. (*Id.*)

This Court appointed KCC Class Action Services, LLC ("KCC") as the Claims Administrator under the terms of the Settlement Agreement (*Id.* ¶4); found that the methods of giving notice prescribed in the Settlement Agreement meet the requirements of the Federal Rules of Civil Procedure and due process, are the best

-1-

notice practicable under the circumstances, shall constitute due and sufficient notice to all persons entitled thereto, and comply with the requirements of the Constitution of the United States; and, ordered that notice of the proposed settlement be served on class members. (*Id.* ¶ 9.)

Plaintiff can now report that the notice program ordered by this Court has been very successful, and Plaintiff therefore now presents the matter for final approval. Specifically, as evidenced by the contemporaneously filed Declaration of Alex Thomas for Claims Administrator Re: Notice Procedures ("KCC Decl.") dated November 1, 2021, on September 24, 2021, KCC caused the Notice to be emailed to 20,519 Class Members in the Class List who have open accounts and have opted in to receive electronic communications, and also on that date caused the Notice to be mailed to the 3,354 names and mailing addresses in the Class List.  (KCC Decl. ¶¶ 5, 8.) On that same date, as ordered, KCC also established a website dedicated to this matter to provide information to the Class Members and to answer frequently asked questions, using the URL set forth in the Notice. (KCC Decl. ¶ 11.)  After re-sending notices which had been returned, the Notice program ordered by this Court achieved an overall delivery rate of 98.61%. (KCC Decl. ¶ 10.)

Further, as of the date of the filing of this Motion, not a single class member has chosen to opt-out of the proposed settlement, and not a single class member has chosen to object to the proposed settlement.  (KCC Decl. ¶¶ 13, 14.)[1]

In sum, the proposed settlement of this class action is an excellent result for class members, and class members' reaction to it to date has been overwhelmingly favorable.

_____

[1] The deadline to opt out has expired, and to object has not yet expired. Class Counsel will provide a final tally of opt-out requests and objections in advance of the final approval hearing.

-2-

## II.   THE HISTORY OF THIS CASE.

### A.   The Law and Motion Practice Which Occurred in This Case

Plaintiff filed this putative class action complaint entitled *Varga v. American Airlines Federal Credit Union*, in the United States District Court for the Central District of California, Case No. CASE NO.: 2:20-cv-04380-DSF-KS, on May 14, 2020.  Docket No. 1.   The Complaint alleged claims for breach of contract including the covenant of good faith and fair dealing, money had and received, and violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, *et seq.*   On August 4, 2020, Defendant filed its Notice of Motion and Motion to Dismiss Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Motion to Dismiss").  Docket No. 12.  Plaintiff filed her First Amended Complaint on August 25, 2020.  Docket No. 17.  On September 8, 2020, Defendant filed a Notice of Motion and Motion to Dismiss First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Second Motion to Dismiss").  Docket No. 23.  Plaintiff filed her Response In Opposition to Motion to Dismiss on October 19, 2020.  Docket No. 24.  Defendant filed its Reply in Support of Motion to Dismiss on October 28, 2020.  Docket No. 25.  On November 6, 2020, Plaintiff filed a Request for Judicial Notice of Supplemental Authority in Support of Plaintiff's Response to Motion to Dismiss.  Docket No. 26.  On November 13, 2020, Defendant filed a Notice of Supplemental Authority in Support of its Second Motion to Dismiss.  Docket No. 29.  On November 19, 2020, Plaintiff filed a Request For Judicial Notice In Support of Plaintiff's Response to Defendant's Motion to Dismiss. Docket No. 31.

On December 1, 2020, this Court granted in part and denied in part Defendant's Second Motion to Dismiss, denying the motion as to Plaintiff's First Cause of Action, ruling that Plaintiff's contract claim is not preempted as it is a state law contract claim and does not interfere with banking-related functions, and that Plaintiff plausibly alleged a breach of contract claim with regard to the APPSN

-3-

transactions and Retry Fees.  Docket No. 34.  Defendant filed its Answer to the Amended Complaint on January 22, 2021.  Docket No. 38.

On July 14, 2021, Plaintiff filed a Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class. Dkt. No. 48.  On August 17, 2021, this Court issued its Order granting the Motion, and set forth in its Order the remaining schedule for this case. Dkt. No. 54.

### B.    The Formal Discovery Performed in this Case.

On September 3, 2020, Plaintiff served her First Set of Requests for Production on Defendant. (Kick Decl. ¶ 7.)  On September 8, 2020, Defendant served its First Set of Interrogatories to Plaintiff.  On September 21, 2020, Plaintiff served her First Set of Interrogatories to Defendant. (Kick Decl. ¶ 7.)  On October 5, 2020, Defendant provided Plaintiff with its Rule 26 Initial Disclosures. Also on October 5, 2020, Defendant served its Response to Requests for Production on Plaintiff.  Plaintiff provided Defendant with her Rule 26 Initial Disclosures on October 7, 2020.  (Kick Decl. ¶ 7.)  On October 8, 2020, Plaintiff served her Responses and Objections to Defendant's First Set of Interrogatories and her Responses and Objections to Defendant American Airlines Federal Credit Union's First Set of Requests for Production of Documents. (Kick Decl. ¶ 7.) On October 21, 2020, Defendant served its Response to Plaintiff's First Set of Interrogatories.

### C.    The Two Mediations

The parties participated in two mediations in this matter, both with Retired Magistrate Judge Edward Infante of JAMS.  (Kick Decl. ¶ 9.) Settlement negotiations at all times were at arm's length, adversarial and devoid of any collusion.  (*Id*.)  The first of the two mediations took place on March 8, and did not result in a settlement.  The second of the two mediations occurred on March 18, 2021, and also did not result in a settlement.  However, at the conclusion of that second mediation, the mediator made a mediator's proposal.  The parties accepted

-4-

the mediator's proposal on or about March 26, 2021, and the Settlement Agreement being brought to this Court for approval arises from the mediator's proposal.

## III.   TERMS OF THE SETTLEMENT

### A.   Class Definitions

This case challenges two fee practices which Plaintiff alleges were improper under the contracts in effect during the class period.  First, Plaintiff challenges the assessment of overdraft fees on "Authorized Positive, Posted Supposedly Negative" ("APPSN") debit card transactions, which are those that AAFCU authorized against a positive balance, but purportedly settled against a negative one.  (*See generally*, Dkt. No. 17 (First Amended Complaint ("FAC")).)  The second challenged practice is the assessment of more than one insufficient funds fee ("NSF Fees") on the same transaction when reprocessed again after initially being returned for insufficient funds. (*Id.*) Until it changed its disclosure on this issue effective on or about March 1, 2020, Plaintiff contends AAFCU's contracts did not permit it to charge more than one fee for the same item. *Id.* ¶ 76

The "APPSN Fee Class" is defined as those members of Defendant who were charged APPSN Fees between May 14, 2016 and October 8, 2020. (Settlement Agreement ["SA"], ¶ 1.b.)  The "Retry NSF Fee Class" is defined as those members of Defendant who were charged Retry NSF Fees between May 14, 2016 and February 29, 2020. (SA, ¶ 1.x.).

### B.   The Settlement Amount

As stated, the value of the proposed settlement is \$1,765,807.  This is comprised of AAFCU paying \$1,590,000 in cash (SA ¶ 1(y)) and waiving uncollected at-issue fees in the amount \$175,807. (SA ¶ 1(y).)  The proposed settlement does not require any claims to be made by the class members; in other words, class members need not take any action to receive payment.  (SA ¶ 8(d)(v).)

## C.     Payments to Class Members.

Of the $1,590,000 Settlement Fund, $715,500 is allocated to the APPSN Fee Class, and $874,500 is allocated to the Retry NSF Fee Class. (SA ¶ 8.d. iv.)  From that, each class member will receive a *pro rata* share of the settlement proportionate to the eligible fees assessed against the class member.  (*Id*.)

All class members will be paid by direct deposit into their accounts if they are current AAFCU customers, or will be mailed a check if they no longer have an account with AAFCU, with no need to make any claim whatsoever. (SA ¶ 8.d. iv.3.-4.)  For those class members who are paid by check, the class member shall have one-hundred eighty days (180) to negotiate the check. (SA ¶ 8.d. iv.4.)  No class member will be required to make a claim to receive the money.

## D.     *Cy Pres* Distribution

Under no circumstances will any of the money from this settlement revert to Defendant. (SA ¶ 8.d. v.) Rather, "Subject to Court approval, within thirty (30) days after the Final Report, the total amount of uncashed checks, and residual amounts held by the Claims Administrator at the time of the Final Report, shall be paid by the Claims Administrator to a Cy Pres fund or funds that is/are appropriate for the case and agreed to by the parties."  (SA ¶ 11.)  Plaintiff proposes Public Citizen, a 501(c)(3) which has been found by multiple federal courts across the country to be an appropriate *cy pres* recipient for a consumer class action such as this one involving overdraft fees imposed by a financial institution which are alleged to have been improper, including by district courts in the Ninth Circuit and other courts in California. (Kick Decl. ¶ 15.) The Declaration of Public Citizen's President Robert Weissman is filed concurrently and further sets forth Public Citizen's appropriateness as the *cy pres* recipient in this matter. Public Citizen would use the funds to support its research and advocacy supporting strong protections for consumers, including consumers in California. (Weissman Decl. ¶¶ 3-5.)  Further, the organization has been very active in protecting the rights of consumers in the Ninth Circuit. (*Id*. ¶ 9.)

-6-

## IV.   ATTORNEYS' FEES, LITIGATION COSTS, SERVICE AWARDS, AND ADMINISTRATOR COSTS

The Supreme Court and the Ninth Circuit recognize that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." *Staton v. Boeing*, 327 F.3d 938, 967 (9th Cir. 2003) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).)   Further, Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." *Ochinero v. Ladera Lending*, No. SACV 19-1136 JVS (ADSx), 2021 U.S. Dist. LEXIS 192406, at *19 (C.D. Cal. July 19, 2021). "[T]he district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper." *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328 (9th Cir. 1999)

Ninth Circuit courts may award attorneys' fees in common-fund settlements using the percentage-of-the-fund or the lodestar approach. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, at 1047 (9th Cir. 2002).   The "lodestar" method is most used when there is a fee-shifting statute or the relief sought and obtained cannot be easily monetized. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2010).   But in the circumstances of a case such as this one, the percentage method is more appropriate. *Id.*; *see also Ruiz v. XPO Last Mile, Inc.*, No. 5-CV-2125 JLS (KSC), 2017 WL 6513962, at *6 (S.D. Cal. Dec. 20, 2017) ("the percentage-of-the-fund calculation is preferable to the lodestar approach"). This practice is well-established in Ninth Circuit jurisprudence. *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995).

Class Counsel applies for a fee award pursuant to a percentage-of-the-fund. Under the terms of the Settlement Agreement, Class Counsel may apply to this Court for attorneys' fees of twenty-five percent of the Value of the Settlement, plus

-7-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
CASE NO. 2:20-CV-04380-DSF-KS

reimbursement of reasonable litigation costs, and Defendant has agreed not to oppose an application for up to that amount.[2]  (SA ¶ 8(d)(i).) The "Value of the Settlement" as defined in the Settlement Agreement equals $1,765,807. (SA 1.(aa).) Class Counsel respectfully applies for $441,451.75, which is 25% of the $1,765,807 "Value of the Settlement."

While some Ninth Circuit cases do refer to 25% as a "benchmark" percentage for awarding fees, "in most common fund cases, the award exceeds that benchmark" percentage. *See Knight v. Red Door Salons, Inc.*, NO. 08-01520 SC, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) (citing *In re Activision*, 723 F. Supp. at 1377-78).  "California courts routinely award attorneys' fees of one-third of the common fund." *See Beaver v. Tarsadia Hotels* (S.D. Cal., Sept. 28, 2017) No. 11-CV-01842-GPC-KSC, 2017 WL 4310707, at *9.  *See, e.g.*, *Ingalls v. Hallmark Mktg. Corp.*, 08cv4342 VBF (Ex), Doc. No. 77, ¶ 6 (C.D. Cal. Oct. 16, 2009) (awarding 33.33% fee on a $5.6 million class action); *Birch v. Office Depot, Inc.*, Case No. 06cv1690 DMS (WMC), Doc. No. 48, ¶ 13 (S.D. Cal. Sept. 28,

---

[2]  Although the waiver of $175,807 in uncollected at-issue fees is a "monetary" component of this settlement, even when actions resulting from a lawsuit are *not* "monetary" in nature, courts nonetheless include them in calculating the value of a proposed settlement for purposes of an attorney fee award. For example, according to the Federal Judicial Center, "Courts use two methods to calculate fees for cases in which the settlement is susceptible to an objective evaluation. The primary method is based on a percentage of the actual value to the class of any settlement fund ***plus the actual value of any nonmonetary relief***." Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges, 3d. Ed., 35 (2010) (emphasis added). And according to the American Law Institute, "a percentage-of-the-fund approach should be the method utilized in most common-fund cases, ***with the percentage being based on both the monetary and nonmonetary value of the judgment or settlement.***" Principles of the Law of Aggregate Litigation, The American Law Institute, Mar 1, 2010 § 3.13 (emphasis added). Under this rationale, "[i]n calculating the overall settlement value for purposes of the 'percentage of the recovery' approach, Courts include the value of both the monetary and non-monetary benefits conferred on the Class." *Poertner v. Gillette Co.*, 618 Fed. Appx. 624 (11th Cir. 2015) (approving percentage of common fund award and finding that "settlement's allocation of benefits was fair" by including "the value of the nonmonetary relief and cy pres award" as "part of the settlement pie"; rejecting objector's argument that analysis of a reasonable attorney fee should "exclud[e] the substantial nonmonetary benefit and the cy pres award").
Even if the waiver of the uncollected funds was not counted at all, the fee request sought of $441,451.75 would still only equal 27.7% of the cash portion.

2007) (awarding a 40% fee on a $16 million wage and hour class action); *Rippee v. Boston Mkt. Corp.*, Case No. 05cv1359 BTM (JMA), Doc. No. 70, at 7-8 (S.D. Cal. Oct. 10, 2006) (awarding a 40% fee on a $3.75 million class action).

Nonetheless, Class Counsel in this case seek only a fee award of 25% of the $1,765,807 value of the settlement, meaning an award of $441,451.75.

The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

In this case, analyzing these factors strongly supports the requested award. First, the result achieved in this case is very favorable. The Value of the Settlement is $1,765,807, and the aggregate possible class damages at issue in this case are $2,652,075. (Olsen Decl., ¶¶ 7, 9.)  This means that the proposed settlement represents approximately 66.5% of the possible damages, an excellent result. (*Behrens v. Wometco Enters., Inc*., 118 F.R.D. 534, 542 (S.D. Fla. 1988), aff'd 899 F.2d 21 (11th Cir. 1990) "[a] settlement can be satisfying even if it amounts to a hundredth or even - a thousandth of a single percent of the potential recovery."])

Two, regarding the risks of the litigation, they were substantial.  A Motion to Dismiss already had been granted in part, and there still remained the risk of certification and ultimately favorable findings of fact. (Kick Decl, ¶ 16.) Third, regarding the skill required and quality,  this is an esoteric area of law, and Class Counsel has developed an expertise in it, and the result speaks to the quality of the representation. (Kick Decl, ¶ 3.) The fourth and fifth factors, the representation was contingent in nature at all times, and the burden was carried by the attorneys, including forsaking other work. (Kick Decl, ¶ 10.) As explained by the California Supreme Court in *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1133: "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the

-9-

fair market value of his work if he is paid only for the second of second of these functions."

Finally, regarding factor six, although only 25% is being sought in this case, a fee of one-third of the settlement has been approved by at least the following federal district courts in class action cases alleging improper fees by a financial institution: *In re Checking Account Overdraft Litig.,* No. 1:09- MD-02036-JLK, 2020 U.S. Dist. LEXIS142012 (S.D. Fla. Aug. 10, 2020) (**35%** of $7.5 million); *Swift v BancorpSouth*, No. 1:10-cv-00090-GRJ (N.D. Fla.) (**35%** of $24 million); *Wolfgeher v. Commerce Bank, N.A.,* No. 1:09- MD-02036-JLK (S.D. Fla.) (Dkt. No. 3574) (**38%** of $18.3 million); *Schulte v. Fifth Third Bank*, No. 09-cv-6655 (N.D. Ill.) (**33-1/3%** of $9.5 million); *Johnson v. Community Bank, N.A.*, No. 12-cv-01405-RDM (M.D. Pa.) (**33-1/3%** of $2.5 million); *Bodnar v. Bank of America*, No. 5:14-cv-03224-EGS (E.D. Pa.) (**33-1/3%** of $27 million); *Holt v. Community America Credit Union, No.* 4:19-CV-00629-FJG (W.D. Mo.) (**33-1/3%** of $3.078 million); *Liggio v. Apple Federal Credit Union,* No. 1:18- cv-01059-LO-MSN (E.D. Va.) (**33-1/3%** of $2.7 million); *Lambert v. Navy Fed. Credit Union*, No. 1:19-cv- 103-LO-MSN, 2019 U.S. Dist. LEXIS138592, at *3 (E.D. Va.) (**33-1/3%** of $16 million); *Ketner v. SECU* Maryland, Civil No.:1:15-CV-03594-CCB (D. MD. 2017) (final approval granted on January 11, 2018, 33-13% awarded); *Towner v. 1st MidAmerica Credit Union*, No. 3:15- cv-1162 (S.D. Ill. 2017) (final approval granted in November 2017, 33-1/3% awarded); *Lane v. Campus Federal Credit Union*, Case No. 3:16-cv-00037 (M.D. La. 2017) (final approval granted in August 2017, 33-1/3% awarded); *Gunter v. United Federal Credit Union,* United States District Court for the District of Nevada, Case No. 3:15-cv-00483-MMD-WGC (47.6% fee awarded).

The California Supreme Court explained recently there is no requirement under California law to satisfy two separate different analysis for a fee award in a class action, meaning there is no requirement for the Court to perform a lodestar cross-check in addition to performing a percentage-of-benefit analysis. (*Laffitte v.*

-10-

*Robert Half Int'l Inc.* (2016) 1 Cal.5th 480, at 503.) There are numerous "recognized advantages of the percentage method—including relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging the litigation." *Laffitte*, 1 Cal.5th at 503. In short, "the percentage of the fund method more accurately reflects the results achieved." *Id.* at 489 (citing *Rawlings v. Prudential-Bache Props., Inc.* (6th Cir. 1993) 9 F.3d 513, 516). *See, also, e.g., Vizcaino*, 290 F.3d at 1050 & n.5 ("The lodestar method is merely a cross-check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement.").

Nonetheless, Plaintiff's counsel is very mindful of this Court's Order in granting preliminary approval that it will perform a lodestar cross-check. Therefore, the lodestars of the attorneys involved in this case are submitted concurrently with this Motion for the Court's inspection, and are presented in a manner which the attorneys believe is compliant with this Court's instruction in its Case Management Order.[3] Plaintiff's attorneys' lodestar in this case–i.e., the amount billed to date– already equals $382,022.40, comprised as follows: the lodestar of The Kick Law Firm, APC, $187,640; Kaliel Gold PLLC, $115,212.40; and, Wilentz, Goldman & Spitzer, P.A., $79,170. Therefore, the total fee award sought of $441,451.75, from a lodestar multiplier perspective means a positive multiplier of less than **1.16**x. (Kick Decl. ¶ 6.)

---

[3] Each of the three firms have a declarant verifying the time and attaching it as an exhibit to the respective declarations. The format attempts to comply with this Court's Order at:
https://www.cacd.uscourts.gov/sites/default/files/documents/DSF/AD/ORDER%20RE%20FORMAT%20OF%20TIME%20AND%20EXPENSE%20RECORDS.pdf

-11-

"The economic rationale for fee enhancement in contingency cases has been explained as follows: "A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans." (Posner, Economic Analysis of Law (4th ed. 1992) pp. 534, 567.) "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." (Leubsdorf, *The Contingency Factor in Attorney Fee Awards* (1981) 90 Yale L.J. 473, 480; see also *Rules Prof. Conduct, rule 4-200(B)(9)* [***385] [recognizing the contingent nature of attorney representation as an appropriate component in considering whether a fee is reasonable]; ABA Model Code Prof. Responsibility, DR 2-106(B)(8) [same]; ABA Model Rules Prof. Conduct, rule 1.5(a)(8).) (*Ketchum*, at 1133.)  Lodestar multipliers far higher than that sought here are routinely approved in the Ninth Circuit. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 (affirming 25% fee recovery, which was supported by lodestar cross-check with a multiplier of **3.65x**, and explaining that that multiplier "was within the range of multipliers applied in common fund cases").

Regarding costs, an attorney may recover "those out of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted).  Regarding costs, they are $26,373, and are detailed in the declaration of Class Counsel. (Kick Decl., at ¶ 13.)  Finally, the court appointed claims administrator, KCC, is also to be paid from the settlement, and has agreed to cap its billing at $53,500. (Kick Decl., at ¶ 13.)

-12-

## V.  **SERVICE AWARD FOR THE CLASS REPRESENTATIVE**

Earlier this year in the Central District of California, in *Lucy Chi v. University of Southern California, et al.*, C.D. Cal., Case No. 2:18-cv-4258-SVW-GJS, Docket No. 197 (July 12, 2021) The Hon. Stephen Wilson approved a service award of $20,000 each to four separate lead class representatives, and also a service award of $15,000 each to 46 separate additional class representatives.  Plaintiff moves for the Court to approve a service award to the proposed class representative of $15,000.

Numerous district courts within the Ninth Circuit have approved a $15,000 service award or higher. *See, e.g., In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-MD-2541-CW, 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017) (awarding $20,000 each); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *17 (N.D. Cal. Jan. 26, 2007) (approving payments of $25,000 to each of four named plaintiffs, who, *inter alia*, "provided a great deal of informal discovery to Class Counsel" and "provided additional relevant detail at the final fairness hearing").

In *Singer v. Becton Dickinson & Co.*, No. 08-CV-821 - IEG (BLM), 2009 U.S. Dist. LEXIS 114547, at *13 (S.D. Cal. Dec. 9, 2009), chief Judge Irma Gonzalez awarded the class representative $25,000, and wrote, "[T]he $25,000.00 service enhancement award to Plaintiff Singer appears to be reasonable in light of his efforts on behalf of the Settlement Group Members." See also, *In re High-Tech Emple. Antitrust Litig.*, 2014 U.S. Dist. LEXIS 184827, at *13 (N.D. Cal. May 16, 2014) ($20,000 service awards "are fair and reasonable").  *See Dennis v. Kellogg Co.*, No. 09–CV– 1786–L (WMc), 2013 WL 6055326, *8 (S.D. Cal. Nov. 14, 2013) ("Incentive awards are fairly typical in class action cases") (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)).

In other overdraft fee class actions, the following service awards have been awarded by the district courts: *Smith v. Bank of Hawaii*, D. Haw., Case No. 1:16-CV-00513 JMS-WRP, Docket No. 233 (Dec. 22, 2020) (granting $15,000 service award);

-13-

*Story v. SEFCU*, N.D.N.Y., Case No. 1:18-CV-764 (MAD/DJS), Docket No. 77 (Feb. 25, 2021) (granting $15,000 service award to each of the three class representatives, for a total of $45,000); *Coleman-Weathersbee v. Michigan State University Federal Credit Union*, E.D. Mich., Case No. 5:19-cv-11674-JEL-DRG. Docket No. 33 (July 29, 2020) (granting $14,674 service award in the form of the forgiveness of a loan); *Pingston-Poling v. Advia Credit Union*, W.D. Mich., Case No. 1:15-cv-01208-GJQ-RSK, Docket No.148-12 (October 20, 2019) (granting $10,000 service award); *Bowens v. Mazuma Credit Union*, W.D. Mich., Case No. 1:15-cv-01208-GJQ-RSK, Docket No. 70 (Oct. 23, 2019) (granting $12,000 service award).

In deciding the amount of a service award, a court should consider: "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and person difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. (*Cellphone Termination Fee Cases* (2010) 186 Cal.App.4th 1380, 1394-95 [internal citations and quotation marks omitted].) Courts routinely grant service awards in similar amounts or higher. (*See e.g., id.* at 1395 [finding no abuse of discretion in a $10,000 service award]; *Garner v. State Farm Mut. Auto. Ins. Co.* (N.D. Cal. Apr. 22, 2010) 2010 WL 1687832, at *17 n.8 ["Numerous Courts in the Ninth Circuit and elsewhere have approved Enhancement Awards of $20,000 or more where, as here, the class representative has demonstrated a strong commitment to the class."]; *Reed v. 1-800 Contacts, Inc.* (S.D. Jan. 2, 2014) 2014 WL 29011, at *10 [awarding $10,000 enhancement award to named plaintiff who "devoted significant time to pursuing this action and his efforts resulted in a significant settlement award for class members," including a common fund of $11.7 million].)

Ms. Varga was essential to the success of this case. She put herself forward to protect class members by being the named plaintiff in this suit. Ms. Varga's efforts included spending no less than 30 hours on the telephone and via email and WhatsApp conferring with Class Counsel, reviewing the Complaint, responding to Defendant's interrogatories and requests for production of documents, reviewing the responses and objections to Defendant's interrogatories and requests for production of documents, and discussing the mediation in this matter and developments in Court with class counsel. (Declaration of Sylvia Varga in Support of Plaintiff's Motion for Final Approval of Class Action Settlement ("Varga Decl."), at ¶ 4.) She conferred with Class Counsel numerous times. (*Id.*, ¶ 4.) She gathered documents for discovery purposes and worked with Class Counsel to confirm her claims were actionable. (*Id.*) She reviewed the complaint before its filing, reviewed discovery as necessary, and participated in preparing responses to Defendant's discovery. (*Id.*)  Moreover, Ms. Varga has experienced strain under the emotional toll of this litigation, especially in terms of her perception that the publicity associated with this action may have damaged her reputation with her employer and with Defendant.  (*Id.* ¶¶ 2-3.)  Ms. Varga has tried to open an account with AAFCU, but has been told that she must have her counsel speak with AAFCU. (*Id.* ¶ 2.)  She is not now able to open an account with Defendant, which she regards as a loss based on her understanding that "American Airlines employees get all sorts of perks with AAFCU." (*Id.* ¶ 6.)   Ms. Varga was never offered any inducement to become a class representative. (*Id.*, ¶ 3.) A $15,000 service award is appropriate.  No class member has objected or opted out. Defendant has reserved its right to object to a class representative service award request of more than $10,000.

## VI.   ARGUMENT

### A.   The Settlement Should Be Finally Approved

The law favors and encourages compromised settlements in class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  "When

-15-

reviewing complex class actions settlements we have a strong judicial policy that favors settlements." *Pacific Enterprises Security Litigation*, 47 F. 3d 373, 378 (9th Cir. 1995). As the leading treatise on class actions has stated, "by their very nature, because of the uncertainties of outcome, difficulties of proof, and length of litigation, class actions suits lend themselves readily to compromise." Newberg on Class Actions, §11:41 (4th Ed.). Federal Rule of Civil Procedure Rule 23(e)(2) was amended effective December 2018, and provides that the Court may finally approve a settlement only after "finding that it is fair, reasonable, and adequate." Fed. R Civ. P. 23(e)(2). To determine whether that requirement is met, the court must consider: (A) the adequacy of the representation by the class representatives and class counsel; (B) whether the proposal was negotiated at arm's length; (C) the adequacy of the relief that the proposed settlement provides for the class; and (D) whether all members of the are treated equitably relative to each other under terms of the proposed settlement. Fed. R. Civ. P. 23(e)(2)(A)-(D).

In the Ninth Circuit, courts look to the following factors to determine whether to grant final approval of a proposed settlement: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). *See Hanlon*, 150 F.3d at 1026.

The ultimate question is attempting to discern whether or not the settlement is "fair, reasonable, and adequate." *Officers of Justice v. Civil Service Commission of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). This is consistent with the Advisory Committee Notes that, "The central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate." Advisory Committee

-16-

Notes to 2018 Amendments to Fed. R. Civ. P. 23.  Plaintiff now goes through each of the factors set forth by the Ninth Circuit in *Hanlon*, as well as the factors in amended Rule 23(e)(2).  There is much overlap among the factors.  This is not surprising, because as the Advisory Committee Notes to amended Rule 23 state, "The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  This proposed settlement meets all pertinent criteria and conforms with existing Ninth Circuit law.

###     1.      The Settlement Is Reasonable, Fair, and Adequate Given the Strength of the Case and the Risks of Litigation.

This section addresses Fed. R Civ. P. 23(e)(2) factor (C), the adequacy of the relief the proposed settlement provides for the class, as well as the first four *Hanlon* factors, those being (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; and, (4) the amount offered in settlement.

As already detailed in Section I, *supra*, the value of the proposed settlement is $1,765,807. The aggregate possible class damages at issue in this case is $2,652,075. (Olsen Decl. ¶ 7, 9.)  This means that the proposed settlement represents approximately 66.5% of the possible damages.  Courts in this Circuit have determined that settlements are, of course, reasonable where plaintiffs recover only part of their actual losses.  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.") (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004)); *See also City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380, 1386 (S.D.N.Y. 1972) (a recovery of 3.2 % to 3.7 % of the amount sought is "well within the ball park"), aff'd in part, rev'd on other grounds, 495 F.2d 448 (2d Cir. 1974); *see also Behrens*

-17-

*v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), aff'd 899 F.2d 21 (11th Cir. 1990), "[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate…a settlement can be satisfying even if it amounts to a hundredth or even - a thousandth of a single percent of the potential recovery;" *Martel v. Valderamma*, 2015 U.S. Dist. LEXIS 49830 * 17 (C.D. Cal. 2015) (approving a settlement of $75,000 when potential damages were $1.2 million, or about 6%); *In re Toys R US FACTA Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014) (approving settlement with *vouchers* (not cash) potentially worth a maximum of three percent (3%) *if all possible claims were actually made*, or $391.5 million aggregate voucher potential where the class could have recovered $13.05 billion).

In terms of risks, the risks in the case include that a trier of fact might agree with Defendant that the language at issue actually did allow Defendant to assess fees in the manner it did. (Kick Decl. ¶ 16.) Further, although Plaintiff successfully opposed the Motion to Dismiss, Defendant has not yet filed a Motion for Summary Judgment, and this raises risk.  Also, the Motion for Class Certification has not yet been filed, and although Plaintiff believes it would be a strong motion, Defendant would argue against it and this presents another risk. (*Id.*)

If Plaintiff prevailed on class certification and summary judgment, and if the case still did not resolve at that time, there would have been an expensive trial, and regardless of which party prevailed, there likely would be appellate practice, further delaying any possible actual receipt of money by the class members. (*Id.*) The costs and attorneys' fees to both sides would be substantial. (*Id.*)

"The risks and certainty of recovery in continued litigation are factors for the Court to balance in determining whether the Settlement is fair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian and German Bank Holocaust Litig.*,

-18-

80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000).  Thus, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id*. (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed. 2002).  *See also Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 340 (W.D. Pa. 1997) ("[I]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.") (citations omitted).

But here, because of the substantial amount being recovered for class members, no such concerns even exist.  The amount recovered in settlement for the class members is a far higher percentage than in most cases.

### 2.   The Settlement Was Negotiated at Arm's Length And The Experience and Views of Counsel Further Support It.

This section addresses Rule 23(e)(2)(B)'s instruction to consider whether the proposed settlement was negotiated at arm's length, as well as *Hanlon* factor 6, that being the experience and views of counsel.[4]

The proposed Settlement Agreement arises out of serious, informed, and non-collusive negotiations facilitated by a neutral mediator. (Kick Decl. ¶ 9.)  "We put a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publishing*, 563 F.3d 948, 965 (9th Cir. 2009). "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).

In this case, Class Counsel have investigated the factual and legal issues raised in this action, and are in favor of the settlement.   (Kick Decl. ¶¶ 7, 9, 17.) They are very experienced in litigating consumer class actions and other complex matters, and have a particular expertise in overdraft fee class actions. (Kick Decl. ¶¶ 2-5.)

---

[4] Regarding *Hanlon* factor 7, the presence of a governmental participant, there was no government actor present in this case.

-19-

Further, as stated, the settlement being presented to this Court for approval is the result of a mediator's proposal made by a highly regarding mediator, The Hon. Edward Infante (Ret.) of JAMS, after two sessions of mediation with Judge Infante had not resolved the matter.  (Kick Decl. ¶ 9.)  A settlement process facilitated by a court-appointed mediator weighs heavily in favor of approval. *Rosales v. El Rancho Farms*, No. 1:09-CV-00707-AWI, 2015 WL 4460635, at *16 (E.D. Cal. July 21, 2015), report and recommendation adopted, 2015 WL 13659310 (E.D. Cal. Oct. 2, 2015) ("[T]he 'presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness.'") (citation omitted)).  *See also Schofield v. Delta Air Lines, Inc.,* No. 18-cv-00382-EMC, 2019 U.S. Dist. LEXIS 31535, at * 18 (N.D. Cal. Feb. 27, 2019) (assistance of experienced mediator "confirms that the settlement is non-collusive").

### 3.    The Reaction of Class Members

This section addresses the *Hanlon* factor related to the reaction of the class members. The reaction of class members to date has been overwhelmingly positive to all aspects of the proposed settlement.  As evidenced by the concurrently filed KCC declaration, the reaction of class members to date has been overwhelmingly favorable.  The time to opt-out of the settlement has expired, and not a single class member has elected to opt-out. (KCC Decl., ¶ 13.) Further, to date, not a single class member has objected to any aspect of the proposed settlement. (*Id.* ¶ 14.)  "The comparatively low number of opt-outs and objectors indicates that generally, class members favor the proposed settlement and find it fair." *Browne v. Am. Honda Motor Co.,* No. CV 09-06750 MMM (DTBx), 2010 U.S. Dist. LEXIS 145475, at *49 (C.D. Cal. July 29, 2010); *see also Churchill Vill., L.L.C. v. Gen. Elec.,*361 F.3d 566 (9th Cir. 2004)*,* 361 F.3d at 577 (upholding district court's approval of class settlement with 45 objections and 500 opt-outs from a class of 90,000).

### 4.    The Extent of Discovery Completed, the Stage of the Proceedings, and the Adequacy of the Representation by the Class Representative and Class Counsel

This addresses *Hanlon* factor number 5, the extent of discovery completed, and the stage of the proceedings, as well as Fed. R Civ. P. 23(e)(2)(A), the adequacy of the representation by the class representative and Class Counsel.

With regard to discovery and the stage of the proceedings, this is detailed in Section II., *supra*., of this Memorandum, as well as the Kick Decl. at ¶ 7.

That Class Counsel successfully performed all that work, much of it complex, esoteric and sophisticated, and are able to bring the settlement amount being brought here for approval, speaks to Class Counsel's adequacy.   Further, Class Counsel in this case are very experienced in litigating consumer class actions and other complex matters, and have a particular expertise in overdraft fee class actions. (Kick Decl. ¶¶ 2-5.)   With regard to class representative Ms. Varga, she too has been much more than adequate, including going above and beyond what class representatives are sometimes asked to do, and is typical of the settlement classes, was very involved in the case. (Varga Decl.; Kick Decl. ¶14.)

### 5.   The Settlement Treats Class Members Equally

This section addresses Fed. R Civ. P. 23(e)(2)(D), that being whether all members of the are treated equitably relative to each other under terms of the proposed settlement.  All class members will receive a *pro rata* distribution based on the amount of eligible overdraft fees they incurred. (SA ¶ 8.d. iv.)   "Settlement distributions, such as this one, that apportion funds according to the relative amount of damages suffered by class members, have repeatedly been deemed fair and reasonable. *In re Vitamins Antitrust Litig*., 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000); *See also*, *In re Lloyds' Am. Trust Fund Litig*., 2002 WL 31663577, at *19 (S.D.N.Y. Nov. 26, 2002) ("[*P]ro rata* allocations provided in the Stipulation are not only reasonable and rational, but appear to the fairest method of allocating the settlement benefits.").

Because the plan of distribution will both "take appropriate account of differences" among claims, while also maximizing efficiency, the plan supports final approval. Fed. R. Civ. P. 23(e), Adv. Comm. Notes to 2018 Amendments.

### 6. The Remaining Rule 23(e) Factors

Rule 23(e)(2), as amended, also considers: (i) the effectiveness of the proposed method of distributing relief to the class, including the method of processing class-member claims; (ii) the terms of any proposed award of attorneys' fees, including timing of payment; and, (iii) any agreement made in connection with the proposed settlement. Each of these additional considerations also supports final approval of the Settlement.

With regard to the first prong, the effectiveness of the method of distribution of the relief to the class members, all class members will be paid by direct deposit into their accounts if they are current AAFCU customers, or will be mailed a check if they no longer have an account with AAFCU, with no need to make any claim whatsoever. (SA ¶ 8.d. iv.3.-4.)  No class member will be required to make a claim to receive the money. For those class members who are paid by check, the class member shall have one-hundred eighty days (180) to negotiate the check. (SA ¶ 8.d. iv.4.)  With regard to the second prong, attorneys' fees, the amount being sought is reasonable, and is set forth above. With regard to the third prong, other agreements, there are no agreements between the parties beyond those made in the Settlement Agreement. (Kick Decl. ¶ 9.)

### B. The Settlement Class Should Be Finally Certified

In granting preliminary approval, this Court already determined that the proposed settlement class fulfills all the criteria of Rule 23, and is appropriate for certification. (Docket No. 54.) Nothing has changed. Specifically, the Court found the class was numerous as to make joinder impracticable; that there existed that common issues of law and fact; that these common issues predominated; that the claims of the class representatives were typical of the  class members; that the class

-22-

representatives and Class Counsel had and would protect the interests of the class members; and, that a class action is superior to other methods for adjudicating the controversy. (*Id*. ¶ 7.)   None of these factors have changed, and it is therefore appropriate for this Court to now grant final certification of the Settlement Class. Regarding numerosity, Plaintiff's expert has determined there are 26,787 class members. (Olsen Decl., at ¶¶ 8, 10.) Regarding commonality, it is not disputed that the liability theories underlying the class claims here involve a uniform overdraft fee and NSF fee practice, and uniform contractual terms, and this "common core of salient facts" establishes commonality. *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998). Typicality is satisfied as the claims of the class  representative claims rest on the same legal theory as those of absent class members. (Varga Decl.*; Kick Decl*. ¶ 14; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). Adequacy is satisfied as Class Counsel and the representative plaintiff have no conflicts and have prosecute the action vigorously on behalf of the class. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Finally, the proposed settlement class also satisfies rule 23(b)(3) as it is undisputable that "common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,'…" *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 526 (C.D. Cal. 2012) (quoting *Hanlon*, 150 F.3d at 1022).

## VII.    <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court grant final approval of the settlement, the request for attorney's fees and costs, the request for a service award to the class representative, and the request for approval of class administrator expenses.

Dated: November 1, 2021                   Respectfully submitted,


By:    <u>/s/ Taras Kick</u>
Taras Kick

-23-

Taras@kicklawfirm.com
Jeffrey Bils
THE KICK LAW FIRM, APC
815 Moraga Drive
Los Angeles, CA 90049
Telephone: (310) 395-2988
Facsimile: (310) 395-2088

Jeffrey D. Kaliel, CA Bar No. 238293
jkaliel@kalielpllc.com
Sophia Gold (CA State Bar No. 307971)
sgold@kalielpllc.com
**KALIEL PLLC**
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783

Kevin P. Roddy, CA Bar No. 128283
kroddy@wilentz.com
**WILENTZ, GOLDMAN & SPITZER,**
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ  07095
Tel:  (732) 636-8000 Fax:  (732) 726-6686

-24-

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 1st day of November 2021, the foregoing document was filed electronically on the CM/ECF system, which caused all CM/ECF participants to be served by electronic means.


                               */s/ Jeffrey C. Bils*
                               Jeffrey C. Bils